The following case (a short abstract of which was published in our supplement of the 5th of April last, ante p. 19,) is one of considerable importance. And as great anxiety has been manifested by members of the bar to know what were the facts of the case, and the precise questions decided, we have concluded to publish the chancellor's opinion entire in this No.; which will be sent not only to subscribers, but to those gentlemen who have applied or may apply for copies of the opinion.

## ROBERT ANDERSON *vs.* GEORGE RAPELYE.

This was an appeal from a decree of the assistant vice chancellor of the first circuit. The object of the complainant's bill was to set aside the assignment of a bond and mortgage from him to the defendant, and to have another bond given by him and his father-in-law, to the defendant, guarantying the payment of such bond and mortgage, by the mortgagor delivered up and cancelled, on the ground of usury. The facts of the case were substantially as follows: The complainant held a bond and mortgage against John Anderson, given on the 18th of December, 1836, conditioned for the payment of $3000 in one year, with interest at the rate of seven per cent per annum, payable half yearly. Being in want of money, and understanding the defendant was in the habit of purchasing bonds and mortgages, the complainant applied to him to purchase the bond and mortgage in question, in June, 1837. Rapelye agreed to purchase the bond and mortgage at a discount of $400 in addition to the interest then due thereon, provided the complainant would procure his father-in-law, A. A. Remsen, to join in a bond as security to Rapelye, the purchaser, that the whole amount of the bond and mortgage and the interest thereon should be paid to him on the day when by the terms of such bond and mortgage they were to become due and payable. The assignment and the bond of the complainant and his father-in-law were given to the defendant accordingly; which assignment stated the consideration paid by the defendant to be $3000, and which sum the complainant covenanted was still due and owing on such bond and mortgage. But the real consideration of the assignment, and of the bond of the complainant and his father-in-law, was the $2600 which by the private agreement between the assignor and assignee was to be paid therefor. The assistant vice chancellor considering this case as not distinguishable from *Cram* v. *Hendricks,* (7 *Wend. Rep.* 569,) and *Mazuzan* v. *Mead,* (21 *Idem,* 285,)

dismissed the bill. And from this decree the complainant appealed.

*M. S. Bidwell & S. F. Clarkson*, for the appellant.

*J. W. Gerard*, for the respondent.

THE CHANCELLOR. As this suit was commenced subsequently to the adoption of the 17th rule, as amended in May 1839, whatever is stated in the bill as the act or deed of the defendant, or as a fact within his personal knowledge, and which is not denied in the answer, is considered as admitted for all the purposes of this suit.; and the answer of the defendant could not be excepted to for insufficiency in that respect, so as to compel a further discovery as incidental to the relief sought by the bill. (*Clute & Mead* v. *Bool*, 8 *Paige's Rep.* 88.) The evidence of Remsen, therefore, appears to be of little consequence except to show that the real agreement upon which the assignment was made, and his guaranty of the whole debt was executed was not stated in his presence. For all the facts of which he had any knowledge, are either expressly admitted in the answer, or impliedly admitted under the provisions of the rule to which I have referred. The defendant produced a copy of the bond executed by the complainant and Remsen ; which bond, upon its face, shows that it was executed at the same time with the assignment to him of the other securities for the $3000 ; and as a part of the same transaction. The effect of that bond, unless it could be impeached for usury, was to render the complainant, and his father-in-law as his surety, liable for the payment of the whole amount of the $3000 bond and mortgage, and the interest thereon, if it was not paid by the mortgagor on the day it was to become due and payable. For it recites that the assignment, which it will be recollected stated the consideration to be $3000, and not the real sum advanced by the defendant, had been accepted by Rapelye and the consideration therefor paid by him at the special instance and request of the complainant and Remsen the obligors, and simultaneously with the execution of that bond ; and then contains a condition for the absolute payment of the $3000 and interest by the mortgagor or his assigns on the 8th of December, 1837.

The question then arises whether this transaction was in fact an ordinary sale of a chose in action, or was in effect a loan or advance of money on these securities, to enable the nominal purchaser of the complainant's bond and mortgage to get a premium of more than $500, including back interest, for the use of $2600, a little more than five months ; in addition to the legal interest which was to accrue upon the $3000 in the meantime.

This certainly is not the way in which sales of property are usually made. For if a man sells to his neighbor a house, it is not usual to give to the purchaser a collateral agreement, with security, that if such purchaser shall not be able to sell the house at the end of five months at twenty-five or fifty per cent advance upon the amount of the purchase·money, in addition to the use of the house in the mean time, the vendor or his surety will take back the property and pay such purchaser the stipulated advance upon the purchase money. Yet such was precisely the effect of the transaction in this case, except that by inserting a false consideration in the assignment, and making a secret bargain when no other persons were present, the defendant had put it out of the power of the complainant, without the aid of this court, to show that the whole amount specified in the assignment as the consideration thereof, had not been in fact paid. And in the case of *Yankey* v. *Lockhart & Burton*, (4 *J. J. Marsh. Rep.* 276,) the court of appeals in Kentucky declared such a transaction as this to be usurious although the consideration of the assignment was truly stated therein. In that case the owner of a note for $275 sold and assigned it for the sum of $200. But the purchaser not being willing to part with his money upon the assignment alone, required the vendor to give him security to pay the whole $275, if the maker of the note should become insolvent so that it could not be collected of him when it became due. And the vendor, therefore, procured a third person to join with him in an obligation to pay the $275 to the purchaser if the maker of the note should become insolvent. By an early statute of Kentucky all bonds, bills and promissory notes for the payment of money or property are assignable, and may be sued in the name of the assignee ; and the construction which has been put upon assignments under that statute is that there is an implied obligation on the part of the assignor to refund the consideration if the assignor cannot, by due diligence recover the debt, in consequence of the debtor's insolvency. (*See* 1 *Morehead & Brown's Dig. of Kent. Stat.* 153, *and cases there collected.*) This it will be perceived is what has been considered by the courts of this state as the effect of a general endorsement of a negotiable security which is sold at a discount. And in reference to that principle the court of appeals in the case of *Yankey* v. *Lockhart & Burton* say, "If Yankey had taken his recourse against the assignor Lockhart the recovery would have been limited to the $200, the consideration actually paid, interest thereon and the amount of costs expended. Can Yankey, by a seperate contract, independent of the assignment, enlarge Lockhart's legal responsibility and thereby secure to himself more than legal interest on the

money advanced. We are of opinion he can not. To tolerate it would tend to destroy the efficacy of the statute against usury, by encouraging shifts and contrivances to evade its salutary provisions. If Lockhart & Burton had unconditionally agreed to pay Yankey $275 on the 10th of June, 1820, for the $200 advanced, it would have been a plain case of usury. Their agreement to pay it on consideration that Yankey did not, cannot alter the case in principle. It is only obtaining by indirection what cannot be done directly. The law delights in doing things by a straight forward open conduct, and sets its face against circuity and management.— There is nothing immoral or improper in a contract made between assignor and assignee to secure the latter against loss in consequence of the insolvency of the assignor and obligor both ; but such contracts violate the statute against usury where they *attempt* to impose a burden beyond the legal liability resulting from the assignment." The decree of the court below granting relief against the usury was therefore affirmed.

In the case now under consideration it is impossible for any one to wink so hard as not to see that the object of Rapelye, whatever the parties might choose to call the transaction between themselves, was to get more than seven per cent for the advance of his money upon the assignment of his bond and mortgage; and without any risk even of the loss of the extra sum of more than five hundred dollars, which he would of course receive, if the mortgagor paid the bond and mortgage and interest. Had he stipulated with the assignor simply for the refunding of the money advanced, with lawful interest thereon, in case the same could not be collected of the mortgagor or by a foreclosure and sale of the mortgaged premises, it might have come within the principle of the decision of the court for the correction of errors in the case of *Cram* v. *Hendricks ;* though not within the decision itself as that was a case of the assignment of commercial paper. In the recent case of *Mazuzan* v. *Mead*, (21 *Wend. Rep.* 285,) the decision of the supreme court, which followed that of the court of dernier resort, was also upon a negotiable note, and was in fact an endorsement thereof. And as it appeared in the guaranty itself that it had been assigned for but $200, the court very properly said that it could not be distinguished in principle from the case of *Cram* v. *Hendricks*, as it appeared upon the face of the instrument that the consideration of the endorsement alone was legally due and payable upon the guaranty. But in the case under consideration, the $3000 secured by the bond and mortgage assigned, with the interest thereon, would be the amount prima facie recoverable against the complainant and his surety upon their guaranty, if the mortgagor should not pay his bond and mortgage when they

became due and payable. And even if the assignment itself was referred to for the purpose of limiting such recovery to the real sum advanced upon such assignment, the insertion of the false consideration of $3000 therein, would still enable the assignee to recover the whole amount thereof with interest; unless the complainant and his surety should be able in that suit to defeat the recovery altogether by showing the usurious nature of the transaction.

It is no answer in a case of this kind, to say that a court of equity will not permit the party who has taken such a bond to recover thereon any thing more than the amount actually advanced and the legal interest thereon; when the real nature of the transaction is established by evidence dehors the contract. For that is an answer which applied to all cases of usurious contracts, even before the statutes which allowed the party from whom such a contract had been obtained, to come into court for discovery or relief, without paying or offering to pay the amount equitably due. And the usurer will always run the risk of the loss of his extra premium by a bill for the discovery of the real nature of the transaction, if he is permitted to make his contract in such form as to secure the amount of money advanced and the legal interest thereon at all events; with the chance of recovering the usurious premium also, unless the needy borrower or the more unfortunate surety, who has become responsible for such premium shall think proper to subject himself to the expense of a suit here to get rid of the usurious premium merely.

The agreement for the assignment of the bond and mortgage referred to in the pleadings in this case and for the giving of the bond guarantying the payment thereof being usurious, the decree of the assistant vice chancellor dismissing the complainant's bill must be reversed. And in conformity with the directions contained in the fifth section of the act of 1837, to prevent usury, (*Laws of* 1837, *p.* 487,) a decree must be entered declaring that assignment and the bond executed simultaneously therewith, inoperative and void, and that the same be delivered up to the complainant and cancelled; and granting a perpetual injunction against any suit commenced or hereafter to be commenced on such assignment or bond.