Leet *v.* McMaster.

---

## CYNTHIA R. LEET *vs.* WILLIAM G. MCMASTER.

The plaintiff, being the assignee of a mortgage made by P. employed S. an attorney, to foreclose the same by advertisement, who caused a notice of the sale to be published, appointing the 8th day of September, 1866, for the day of sale. The defendant, desiring to bid upon the property, but having doubts about the legality of the proceedings, requested S. to adjourn the sale one week. S. consented to this, provided the defendant would give him $100 for a claim he had against the mortgagor's wife, to which the defendant assented, and the sale was adjourned. S. becoming satisfied his proceedings were not legal, commenced new proceedings, and appointed December 10, 1866, as the day of sale; on which day the plaintiff directed S. to adjourn the sale two weeks, and countermanded instructions previously given to a third person to attend the sale, and bid off the premises. S. disregarded the direction given him, and sold the property, on the day appointed, to the defendant, he being the highest bidder, for $2100, subject to a prior incumbrance of $571; the property being worth $4000. The defendant had no knowledge, at the time of the sale, of any instructions to S. to adjourn the same. There was no agreement between S. and the defendant to share any profits arising from a resale, and the $100 had never been paid by the latter to the former. S. was irresponsible.

*Held,* 1. That if there was any fraud in the matter, for which the defendant was liable, it was in procuring S. not to sell the premises on the day originally appointed; and that the agreement for the payment of the $100, made in September, and the neglect to sell then, had no connection with, or relation to, the sale made in December, upon a new notice.

Leet *v.* McMaster.

2. That assuming that there was no fraud in the case, on the part of the defendant, he having paid for the property more than two thirds of its value, as found by the referee, and nearly the full value, as estimated by some of the witnesses, the hardship was not so severe on the plaintiff, that the court would grant relief, allowing the sale to stand as security for the money paid by the defendant.

3. That the case was not within the principle laid down in *Boyd* v. *Dunlap,* (1 *John. Ch.* 478,) that where a deed is sought to be set aside as voluntary and fraudulent against creditors, and there is not sufficient evidence of fraud to induce the court to avoid it absolutely, but suspicious circumstances as to the adequacy of the consideration, and fairness of the transaction, the court will not set aside the conveyance altogether, but permit it to stand as security for the sum actually paid.

4. That S. being authorized to make the sale, employed for that purpose, and acting within the scope of his authority, and the defendant purchasing the premises without knowledge of any private instructions to such agent, his rights were not affected by the fact that such agent made the sale contrary to, and in disregard of, the instructions of his principal.

5. That it was not a case coming within the authorities relating to client and attorney, in which the court will, at the instance of the client, relieve him from some improper act of the attorney; it not being a case in court, or a judicial proceeding, but a sale under the power in the mortgage, by S. the agent, or attorney in fact, employed to make the same.

6. That had S. refused to pay over the money received on the sale of the premises, the court would have entertained summary proceedings against him, to enforce the payment of the money; the employment to foreclose a mortgage by advertisement, being regarded as so connected with his professional character as to afford the presumption that such character formed the ground of his employment. But when another person is to be affected, other principles of law, as to him, are to be consulted.

A notice of sale, on a statutory foreclosure, need not specify that the mortgage will be foreclosed.

APPEAL from a judgment entered upon the decision of a referee. The plaintiff was the assignee of a mortgage made by one Hiram Pomroy, and she, by her agent, Daniel Pomroy, employed George Sprague, who was an attorney of this court, to foreclose the mortgage by advertisement, pursuant to the statute. Sprague caused a notice of the sale to be published, appointing the 8th day of September, 1866, for the day of sale. At the time and place appointed, Sprague attended, and the defendant

McMaster, desiring to purchase the premises, also attended. McMaster had doubts about the legality of the proceedings, and requested Sprague to adjourn the sale one week, to enable him to ascertain whether the proceedings were legal. Sprague owned a claim of several hundred dollars against the wife of Hiram Pomroy, and he proposed, if McMaster would agree to pay him $100 for the claim, he would adjourn the sale, and it was so agreed between them, and Sprague adjourned the sale to a future day. In the mean time Sprague became satisfied that his proceedings were not legal, and he thereupon commenced new proceedings, and appointed December 10, 1866, as the day of sale. Hiram Pomroy, the mortgagor, desired that the sale should be postponed for two weeks. On the morning of the day designated for the sale, Daniel Pomroy, acting for the plaintiff, directed Sprague to adjourn the sale two weeks. Previous to this, he had instructed his son to attend the sale and bid off the premises. He countermanded this instruction when he directed Sprague to adjourn the sale. Sprague attended at the time and place designated in the notice and offered the premises for sale, and the defendant McMaster, being the highest bidder, became the purchaser, at the bid of $2100, subject to incumbrances—a prior mortgage for $400 with unpaid interest and some costs—of $571. The referee found that the premises were worth $4000. There was no person present at the sale authorized to bid for the plaintiff, or to act for her, except Sprague, and he had no authority other than such as arose out of his general employment to foreclose the mortgage. The defendant McMaster had no knowledge, at the time of the sale, of any instructions to Sprague to adjourn the sale. The referee found that McMaster had paid to Sprague the amount of his bid; that he had not paid the $100 agreed to be paid, &c. as above stated. He also found that there was no agreement between Sprague and McMaster to share the profits which

Leet *v.* McMaster.

McMaster should make on a sale of the premises. Also that Sprague had no pecuniary responsibility; and that there was no bond with the mortgage. He also found that Sprague, after opening the sale, was reminded of his instructions to adjourn, and was requested so to do, but that he declined to do so unless he was secured the $100 above mentioned, expressing the apprehension that if he then adjourned, McMaster would not pay him the $100. The referee, however, found that McMaster had no knowledge of these facts. A question was raised upon the regularity of the sale, which is sufficiently noticed in the opinion. The referee came to certain conclusions of law, which are fully stated, and dismissed the complaint with costs.

*Holmes & Fitts,* for the plaintiff.

*L. F. & G. W. Bowen,* for the defendant.

*By the Court,* MARVIN, J. The plaintiff, in his complaint, alleges confederation between Sprague and the defendant, to defraud her, by making the sale at the time and under the circumstances it was made. These allegations are denied, and the testimony failed to establish them, and the referee has, in effect, found against them.

There cannot, of course, be two opinions touching the conduct of Sprague, and it is to be regretted, on the plaintiff's account, that he is irresponsible. But what is the position, and what are the rights, of the defendant? The referee was requested to find as a fact that the defendant was not a purchaser in good faith. By which I understand that it is claimed that the defendant was a party to the fraud of Sprague. The agreement of Sprague and the defendant that the latter should pay the former $100 for his claim against the wife of Hiram Pomroy, in consideration that Sprague would adjourn the sale a week, is referred to as evidence of a fraudulent understanding be-

tween the parties. This agreement was in September. The adjournment was had, and the proceedings were finally abandoned. This agreement had no relation to the sale in December, upon the notice. I do not feel called upon to remark upon this agreement, so far as the defendant is concerned. He attended at the time and place designated for the sale, for the purpose of bidding, but having doubts whether, if he purchased the premises, he would get a good title, he requested an adjournment for a week, to give time to investigate, and thereupon the agent having charge of the proceedings consents, provided the applicant for the adjournment will give him $100 for a certain claim he has, and the applicant submits. In the meantime the agent becomes satisfied that his proceedings are invalid, and abandons them. If there was any fraud in this matter for which McMaster was liable, it was in procuring the agent not to sell the premises on that day, and the neglect to sell then has no connection with the sale that was made in December.

But it is insisted that if there was no fraud, in the case, on the part of the defendant, the hardship is so severe, on the plaintiff, that the court will grant relief, allowing the sale to stand as security for the money paid by the defendant. The hardship consists in the sale of premises worth $4000 for $2671, a loss, it is said, of over $1300. Some cases are cited. In *Boyd* v. *Dunlap*, (1 *John. Ch.* 478,) the bill was by creditors, to set aside transactions between the debtor and his son, on the ground of fraud. The chancellor held that were there was not sufficient evidence of fraud to induce the court to avoid the deed absolutely, but as there were suspicious circumstances as to the adequacy of the consideration and fairness of the transaction, the court would not set aside the conveyance altogether, but permit it to stand as security for the sum actually paid. The son had taken a conveyance from his father greatly below the real value of the land, the father

still continuing in possession; and though the court, from the evidence, could not say that this was done with intent to defraud creditors, it held that it was inequitable that the son should hold the property, as against the creditors of his father; and that all he could justly claim was the amount he had paid for the land. This case is not in point in the present case.

*Dunn* v. *Chambers*, (4 *Barb.* 376,) is also cited. In that case the court applied the principle in *Boyd* v. *Dunlap* to a case where a party sought relief from a sale made by himself. The court came to the conclusion that there was no actual fraud on the part of the purchaser, but that the case was such as to come within a class of frauds described by Lord Hardwicke in *Chesterfield* v. *Janssen*, (2 *Ves.* 155.) to be "such bargains as no man in his senses, and not under a delusion, would make on the one hand and as no honest and fair man would accept, on the other." The plaintiff and defendant were cousins, and held the property, worth $1800, under the will of their grandfather, and the plaintiff, a sailor, of intemperate habits, sold his interest for $100, receiving $70 in money, and a note for $30. HARRIS, P. J. is careful to say, in the opinion of the court, that "no rule is better settled than that mere inadequacy of consideration does not form a distinct ground of equitable relief. And yet there are cases where there *is* no positive evidence of fraud, in which the inequality of the bargain is so gross that the mind cannot resist the inference that though there be no direct evidence of fraud, such a bargain must have been in some way improperly obtained." The present case is not within the rule referred to. Here the defendant paid for the property more than two thirds of its value as found by the referee, and nearly the full value as estimated by some of the witnesses. Suppose the plaintiff himself had sold the property for the sum paid by the defendant; would any one

suppose that she could obtain relief in a court of equity against such sale?

But the agent sold the property against instructions; and it is claimed that the act of the agent was without authority, and that the defendant therefore took nothing by his purchase. Waiving the question as to the remedy in case the act of the agent was wholly unauthorized, it is enough to say that the facts do not raise the question. The agent was authorized to make the sale; he was employed for that purpose; he had advertised the premises for sale under the power contained in the mortgage; the defendant attended the sale for the purpose of purchasing the premises; he had no knowledge of any private or secret instructions given to the agent, and his rights were not affected by such instructions. The agent was acting within the scope of his authority. (*Story on Agency,* §§ 330, 333. *North River Bank* v. *Aymar,* 3 *Hill,* 262.)

Nor is this a case coming within the authorities relating to client and attorney, in which the court will, at the instance of the client, relieve him from some improper act of the attorney. It was not a case in court, or a judicial proceeding. (12 *Wend.* 60.) The sale of the premises was under the power in the mortgage, and Sprague was the agent, or attorney in fact, to make the sale.

When the proceedings are in court, and the attorney does an unauthorized act for a party prejudicial to him, the party may have relief against such act, if the attorney is irresponsible. The relief is given in the action, and care is taken to preserve the rights of the other innocent party, and as to third persons. (*See Denton* v. *Noyes,* 6 *John.* 296; *Am. Ins. Co.* v. *Oakley,* 9 *Paige,* 494; *Grah. Pr.* 52, *et seq.*) So, if the employment of an attorney is so connected with his professional character as to afford a presumption that his character as attorney formed the ground of his employment by the client, the court exercises a summary jurisdiction over him; as where he is

Leet *v.* McMaster.

employed to collect money, &c. and has collected it, the court will entertain proceedings, on motion, to enforce the payment of the money to his client, &c. (*Matter of Executors of Aitkin, 4 Barn. & Ald. 47. Ex parte Staats, 4 Cowen, 76.*) But there are cases between the attorney and client, when the attorney fails to perform to his client his duty as attorney. The principle upon which they rest, has no application to the present case. Even in a case where the attorney is employed in a matter wholly unconnected with his professional character, the court will interfere, in a summary way, to compel him to execute faithfully the trust reposed in him. (*See above cases.*)

In this case, had Sprague refused to pay over the money received on the sale of the premises, in my opinion the court would have entertained summary proceedings against him to enforce the payment of the money. The employment to foreclose a mortgage, by advertisement, would be regarded as so connected with his professional character as to afford the presumption that such character formed the ground of his employment. But where another person is to be affected, other principles of law, as to him, are to be consulted.

There is no validity in the objection that the notice of sale was insufficient. The objection is, that the notice " does not specify that the mortgage will be foreclosed." The notice is, that default has been made in the payment, &c. describing the mortgage, and the record of it; and that there is due a sum mentioned ; the premises are then described ; and then that, by virtue of a power of sale in said mortgage contained, the above described mortgaged premises will be sold at public auction, to the highest bidder, &c. &c. It will be seen, on consulting the statute, (2 *R. S.* 544, § 4,) that the notice contains all that is required.

The judgment must be affirmed, with costs.

[ERIE GENERAL TERM, February 17, 1868. *Daniels, Marvin* and *Davis,* Justices.]