## DUNN *vs.* CHAMBERS.

In what cases, and upon what principles, a court of equity will relieve a party against an improvident sale and conveyance of his real estate.

In most of the instances in which a party has been relieved from his own improvident bargain, there have been some circumstances of a suspicious character connected with the transaction, or there has been something in the relation which the parties sustained to each other, which rendered it inequitable that the party against whom relief was sought, should retain the advantage he had acquired by his bargain. *Per* HARRIS, P. J.

It is not enough to induce even a court of equity to interfere, that a bargain is hard and unreasonable. *Per* HARRIS, P. J.

Mere inadequacy of price does not form a distinct ground of equitable relief. *Per* HARRIS, P. J.

Where the evidence is insufficient to justify a decree declaring a deed void as against the grantor, as having been fraudulently obtained, and yet it was obtained under such circumstances as to render it at least unfair for the defendant to retain the full advantage of his bargain, the court may direct that the deed shall stand only as a security for the defendant's indemnity, in respect to the sum actually due.

IN EQUITY. On the 24th of November, 1821, John Moore made and published in due form of law his last will and testament, wherein he devised to his two grandchildren, the plaintiff and defendant, the house and lot then occupied by him in South Pearl-street in the city of Albany, in the following terms : " the yearly income and profits thereof for *twenty years* after my decease, subject to the payment to my executors of twenty-five dollars annually for the support of my daughter Maria Dunn, and so that they may not sell or mortgage the same or let for more than one year, and after the said twenty years are expired, to them, their heirs and assigns forever. And should either decease without lawful issue, his part shall go to the survivors—and should both die without lawful issue, then the said house and premises to be lawfully divided among my heirs." The testator died in August, 1834, and his daughter Maria Dunn died about a week afterwards. The will was proved and

recorded as a will of real estate on the 24th of October, 1834. The plaintiff, being a young man of intemperate and dissolute habits, about nine months before the death of his grandfather, went to sea, and returned about the 1st of December, 1834. On the 4th day of that month he released to the defendant all his interest in the premises devised to the parties by the will of their grandfather.    The consideration expressed in the deed was $100, of which $70 was paid in cash, and for the remaining $30 the defendant gave his note at 60 days.    The plaintiff being about to return to sea, it was agreed that the note should be deposited with Mr. Davis, the lawyer who drew the deed, to be delivered up to the defendant in case the plaintiff should not return.    Shortly after executing the deed the plaintiff again went to sea, and did not return until the fall of 1841.    The premises, having become chargeable with a city assessment, were sold by the corporation of the city of Albany, on the 7th of November, 1840, for 1000 years.    The defendant became the purchaser, and paid, upon such sale, $82,32.

On the 15th of January, 1842, the plaintiff filed his bill, charging that the deed to the defendant was executed under a misunderstanding of his rights, and without adequate consideration ; that he was otherwise grossly deceived and imposed upon in relation thereto, and that he was prevailed upon to execute the deed by some unfair means and pretences used in that behalf by the defendant.    The bill also charged that the corporation sale was " procured, suffered or permitted," for the express purpose of getting title to the premises by a purchase under such sale in the absence of the plaintiff, and to defraud him of his interest in the premises, and claimed that the purchase should be held to enure to the joint benefit of the plaintiff and defendant.    The bill prayed that the deed might be declared void, and for an account of the rents, issues and profits of the premises, since they had been in the possession of the defendant.

The defendant put in his answer upon oath, on the 31st of March, 1842, in which he stated that the plaintiff shortly after his return in 1834, applied to him to purchase his interest in the

Dunn v. Chambers.

premises, and offered to sell it for $100, stating that he wanted the money to purchase nautical instruments and books to qualify himself to become a mate of a vessel; that he could not get a living in Albany, and probably never should return, and that the premises were of little or no value to him; that the defendant told him he did not think he had power to sell, or if he had, that he did not wish to purchase, but proposed to consult counsel on the subject, and thereupon the parties went together to the office of Mr. Davis, taking with them a copy of the will, and after a full consultation with Davis and after the plaintiff's rights had been fully made known to him by Davis and by the defendant, Davis was employed by the defendant, in the presence of the plaintiff, to prepare the deed; that the deed was executed in the presence of Davis, who became a subscribing witness to the execution thereof.

The cause was heard upon pleadings and proofs before the late Vice-Chancellor Cushman, who made a decree, on the 5th day of October, 1842, declaring the deed from the plaintiff to the defendant void, and directing a reconveyance by the defendant and a reference to take and state an account of the rents and profits of the premises, and the amount expended by the defendant for repairs, or otherwise, on account of the premises. All other questions were reserved until the coming in of the report. From this decree the defendant appealed. The facts in the case, not already stated, so far as they are material, will be found in the opinion of the court.

*A. J. Colvin*, for the plaintiff.

*John Van Buren*, for the defendant.

*By the Court*, HARRIS, P. J. So far as the bill charges positive and actual fraud on the part of the defendant in obtaining the deed, it is not sustained by the proof. The allegation that the defendant concealed from the plaintiff the provisions of his grandfather's will in his favor, is explicitly denied in the answer, and the proof shows that, if the defendant was ignorant of the extent of his interest, it was his own fault. Judge Hol-

Dunn *v.* Chambers.

liday informed him, before he conveyed to the defendant, what had been left him by the will; and there is no evidence that the defendant was, in any respect, guilty of concealment or misrepresentation. If, therefore, the plaintiff can be relieved against his most improvident sale, it must be upon some other ground than that of actual and positive fraud.

It is also true, that it is not enough to induce even a court of equity to interfere, that a bargain is hard and unreasonable. Every man is presumed to be capable of managing his own affairs; and whether his bargains are wise or unwise, is not, ordinarily, a legitimate subject of inquiry, in a court either of legal or equitable jurisdiction. No principle is better settled than that mere inadequacy does not form a distinct ground of equitable relief. And yet there are cases, where there is no positive evidence of fraud, in which the inequality of the bargain is so gross, that the mind cannot resist the inference, that though there be no direct evidence of fraud, such a bargain must have been, in some way, improperly obtained. In such cases, a court of equity will avoid a bargain, not merely on account of its gross inequality, but because that inequality furnishes " the most vehement presumption of fraud." The cases of such interference are, however, very few. In most of the instances in which a party has been relieved from his own improvident bargain, there have been some circumstances of a suspicious character connected with the transaction, or there has been something in the relation which the parties sustained to each other, which rendered it inequitable that the party, against whom relief was sought, should retain the advantage he had acquired by his bargain. A brief reference to the case before the court, will show whether it contains any of the ingredients which have been regarded as sufficient to induce a court of equity to interfere.

The property devised to the parties as tenants in common is alleged in the bill to be worth $3000. The answer states the value to be about $1400. From the opinion of the witnesses examined on the subject, I think it may be fairly estimated at about $1800. An undivided half of this property, the defen-

dant sold to the plaintiff for $100, only $70 of which was in fact paid. Such a bargain, without reference to the circumstances under which it was made, might properly, I think, be attributed to the second class of frauds enumerated by Lord Hardwicke, in *Chesterfield* v. *Janssen,* (2 *Ves.* 155,) which he describes to be " *such bargains as no man in his senses, and not under a delusion, would make on the one hand, and as no honest and fair man would accept on the other.*" But there are some circumstances in this case which seem, in some degree, to mitigate the unconscionableness of the transaction. It is true, that the plaintiff was an improvident young man. Judge Holliday describes him as " intemperate, associating with bad company, extravagant, thoughtless, squandering his money carelessly, wild and dissipated in his habits and manners, and behaving as a bad boy." He says he does not remember seeing him perfectly sober after the death of his grandfather, until he returned from sea the last time. The witness Withers says he was drunk the day before the deed was executed, and had been for a week before. His kinsman, Morse, says that during the two weeks he was at home after his grandfather's death, " he appeared dull and stupid, not as bright as he had formerly." It was in reference to the vicious propensities of the plaintiff that his grandfather attempted, in his will, to place his property in such a situation that he might have the benefit of it, without the power to squander it. Judge Holliday, who drew the will, states that this was the testator's avowed purpose. On the other hand, Mr. Davis, who drew the deed, and Judge Hilton, who took the acknowledgment, both testify, that from the plaintiff's appearance and conversation when the deed was executed, they considered him competent to transact business. The testimony of Mr. Davis goes very far, I think, to exonerate the defendant from the imputation of bad faith in the transaction. It appears that the defendant had previously consulted Davis as to the power of the plaintiff to sell, and when they came to have the deed executed, he reminded the plaintiff that he was disposing of his interest in the property for a very small consideration ; to which he replied, that he was

going to sea, and should probably never return, and that he preferred that the defendant, rather than any one else, should have the property. And when his attention was called to the fact that the $30 note was not negotiable, he said if he ever came back he should want it, and if not, he did not want the defendant to be troubled about it. There is another consideration which bears somewhat upon the degree of inadequacy. By the terms of the devise, if the plaintiff should die without issue, the defendant would take the whole property. The vice chancellor estimates the value of his life estate at $650. But it is quite obvious that no prudent man would purchase the life estate of such a man as the plaintiff is proved to have been at the time the deed was executed, estimating its value upon the principles of the Northampton tables. There was a strong probability, arising from his dissolute habits and reckless course of life, that his interest in the property would soon be extinguished, so that by the operation of the will itself, the whole property would vest in the defendant.

But after all, the extenuating circumstances which the case presents, do not, in my judgment wholly overcome the inequitable features of the transaction. There was, to say the least, a very great inadequacy of price. In taking the deed, the defendant knowingly defeated the expressed object of his grandfather, whose munificence he was himself enjoying, while others, not interested in the estate, had refused to purchase on account of the provisions of the will. The double relationship in which they stood to each other as kinsmen and joint recipients of their grandfather's bounty, should have prompted the defendant, instead of profiting by the recklessness and improvidence of his cousin, to take measures more effectually to secure the property for his benefit.

It is not unusual for a court of equity, where the proof of actual fraud is not clear and satisfactory, to make the conveyance subservient to the whole equity of the case; while it refuses to declare the deed absolutely void, it will direct that it shall only stand as a security for the sum actually due. It seems to me, that the circumstances of this case are eminently adapted to

this middle course.    I cannot say that the evidence is sufficient to justify a decree declaring the deed fraudulent in fact, and yet it was obtained under such circumstances as to render it, at least, unfair for the defendant to retain the full advantage of his bargain.    Complete justice may be done to both parties, by allowing the deed to stand as a security for the defendant's indemnity, as was done in *Boyd* v. *Dunlap,* (1 *John. Ch.* 478.)

The decree appealed from must be modified so as to conform it to the views expressed in this opinion.    And there must be a reference to state an account between the parties upon the principles stated in the decree.    All further directions, and the question of costs, to be reserved until the coming in of the report.

---

SAME TERM.    *Before the same Justices.*