### JACOB FRIEDMAN *v.* HIRSCH.

*(Supreme Court, General Term, First Department.* February 18, 1892.)

1. SETTING ASIDE DEED OF REMAINDER-MAN—FRAUD—INDEMNITY TO GRANTEE.

In an action to set aside, on the ground of fraud, a deed executed by plaintiff to defendant of a remainder limited after a life-estate, it appeared that plaintiff had just passed his twenty-first year, and that the price paid was between one-third and one-sixth of the value of the remainder, but there was no other evidence of fraud than the inadequacy of price. *Held* that, while plaintiff was entitled to relief, yet, as the proof of actual fraud was not clear and satisfactory, the deed would be allowed to stand as security for the sum paid by defendant.

2. SAME—INADEQUACY OF PRICE—VALUE OF LIFE-ESTATE.

Where, in an action to set aside the conveyance of a vested remainder, it appears that the trial court, in estimating the adequacy of the price, erroneously calculated the value of the life-estate, thereby making the purchase price appear fairly adequate, whereas in fact it was grossly inadequate, a new trial should be granted.

Appeal from special term, New York county.

Action by Jacob Friedman against Herman Hirsch to set aside a transfer of real estate. Judgment for defendant. Plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN, J.

*Hays & Greenbaum*, (*Samuel Greenbaum*, of counsel,) for appellant. *William Irwin*, for respondent.

VAN BRUNT, P. J. This action was brought for the purpose of having declared null and void and canceled of record a certain deed executed by the plaintiff to the defendant, whereby he conveyed a vested remainder which he owned in certain premises in the city of New York. It appeared from the evidence in the case that the premises were of the value of at least between $14,000 and $15,000, and probably more; and that they were owned by the plaintiff and his brother, and were subject to a mortgage of $10,000 and the life-estate of the father. At the time of this transfer the plaintiff had just passed his twenty-first year, and the interest in question was sold for the sum of $300; and it was claimed that it was done while he was intoxicated, and incapable of protecting his own interests, and that he was overreached and

defrauded by the defendant in making the sale. The court below found from the evidence that the plaintiff was not intoxicated and incapable of exercising judgment and discretion with reference to what he was doing at the time he made this sale; that, on the contrary, he knew perfectly well what he was doing, and it was at his instigation that the defendant made the purchase in question; and that the case was one of those in which a court of equity would not interfere without convincing proof of such allegations as those contained in the complaint; and that there was nothing so oppressive or so wrong in the transaction as to require, in furtherance of justice, that anything further should be done than to leave the parties just as they are; and that inadequacy of consideration is not, of itself, a ground for setting aside the conveyance; and so long as there was no element of fraud, oppression, or deceit on the part of defendant, and the whole transaction was conducted in such a way as would indicate that the conveyance was made at the procurement of the plaintiff, and on his express wish and with full knowledge of the surrounding circumstances, and with a determination to do just what he did, there are no equities which call for the interference of the court.

It is claimed upon this appeal that the plaintiff, being a remainder-man, is entitled to greater protection at the hands of the court than persons dealing with their own property, and our attention is called to the rule which has obtained in the English courts that dealings of heirs in reference to their expectancies, and of reversioners and remainder-men in reference to their vested property, are the subjects of special protection by courts of equity; and transactions by persons belonging to those classes are set aside upon much slighter grounds than those which ordinarily obtain. This rule, however, has not been enforced by the courts of this country to the extent which has prevailed in the courts of England; and the evident inclination of the courts of this country has been to restrict the rule in as great a degree as possible. This is shown by the decision of the court in *Parmelee* v. *Cameron*, 41 N. Y. 392, where they would not apply the rule to the sale of a legacy payable at a future day. But, where there is a gross inadequacy of price, that alone will raise a presumption of fraud in some instances, and form a sufficient basis to grant relief. It is true that cases of interferences simply upon this ground are few; and, in most instances in which a party has been relieved from an improvident bargain, there have been circumstances of a suspicious character connected with the transaction, or something in the relations of the parties, which renders it inequitable that the party should retain the advantages he received by his bargain. But in other cases where there is no positive evidence of fraud, but the inequality of the bargain is so gross that the court cannot resist the inference that, though there may be no direct evidence of fraud, such a bargain must have in some way been improperly obtained, relief has been granted. In the case at bar there is a dispute in regard to the value of the property, the evidence ranging from $14,000 to $18,000. The learned judge below thought the property was worth $14,000 to $15,000. There was a mortgage of $10,000 upon it, and a life-estate, the life-tenant being 48 years of age. There was therefore an equity of redemption of $4,000 to $5,000, at least, subject to the life-tenancy. In the points of the respondent it is stated that, according to the tables, the expectancy of life of the tenant is 19 years, and, if the learned judge took this statement as to the expectancy, it may have very largely influenced his judgment. But, upon our examination of the tables, it would appear that, instead of the expectancy being 19 years, it was a little above $9\frac{1}{2}$ years, which makes a vast difference in the value of the remainder; and therefore, if the total value of the premises was between $14,000 and $15,000, the amount paid was about one-third of the value of the remainder; if it was $18,000, it was between one-fifth and one-sixth of its value,—gross inadequacy being apparent. It is, of course, not to be expected that the purchaser of such a remainder will pay the full value as

shown by the tables; but, where the difference is so large as it seems to be in this case, it seems to us that the relief should be granted, although the proof of actual fraud may not be clear and satisfactory. In the case of *Dunn* v. *Chambers*, 4 Barb. 381, the rule is stated that it is not unusual for a court of equity, where the proof of actual fraud is not clear and satisfactory, to make the conveyance subservient to the whole equity of the case. While it refuses to declare the deed absolutely void, it will direct that it shall stand as security for the sum actually due. It seems to us that the circumstances of the case at bar were eminently adapted to this middle course. Complete justice may be done to all parties by allowing the deed to stand for the defendant's indemnity, as was done in *Boyd* v. *Dunlap*, 1 Johns. Ch. 478. The defendant should be paid his costs of the action, including costs of this appeal, and a reasonable counsel fee for defending this action, if this disposition of the case is accepted by him. A new trial, however, will be necessary to carry out these views, and such new trial is ordered accordingly.