EMMA BOSTROM, Appellant, v. JOHN BOSTROM, Respondent.

(236 N. W. 732.)

Opinion filed May 22, 1931.

*Lauder, Heder & Lauder (Murphy & Johanson),* for appellant.

*W. F. Burnett,* for respondent.

BURR, J. There is attached to and made a part of the complaint a copy of an instrument known as Exhibit "A" which reads as follows:

"This agreement made and entered into this 21st day of January, 1927, by and between Emma Bostrom of Morris, Minnesota, party of the first part and John Bostrom of Fairmount, North Dakota, party of the second part, witnesseth.

"That Emil Bostrom, Deceased, was during his lifetime and the late World War, a member of the United States National Army and as such served in the states as well as abroad in France and elsewhere and was discharged from such service in 1919 then affected with a fatal illness which later and on May 8th, 1925 caused his death. That said Emil Bostrom was the husband of first party and the brother of the second party hereto. That when said Emil Bostrom entered said service in 1917, he was single and when he applied for and secured the usual army insurance the second party hereto, his brother, was named and designated as the beneficiary in said insurance policy. That after his said discharge from the army as aforesaid said Emil Bostrom failed to pay any further premium on said policy of life insurance and caused the same thereby to lapse and become void. That said Emil married first party in June, 1921. That said Emil Bostrom attempted to reinstate his said insurance which had lapsed but said application was rejected on account of the fact that the said insured had been designated by the Veteran's Bureau and so found on physical examination to be wholly and totally disabled. That after the death of the said Emil as aforesaid and in the month of June, 1925, first party hereto received notice from the Veteran's Bureau at Washington, D. C., that on account of the total disability of the said Emil a certain amount of back compensation had revived to his benefit and that the said Emil would be entitled to the amount of $3,400, payable in monthly installments, beginning at once, in the sum of $19.58. That when said

notice was received by first party, the said Emil Bostrom, her husband, had already died.

"That through some error in the Veterans' Bureau at Washington, D. C. the second party hereto was also designated as beneficiary and the person entitled to the said monthly installments under the said revived compensation adjustment, and said second party has been receiving said installments and retained the same amounting to $411.18 on the date hereof. That the first party hereto is the mother of one child, a daughter by said Emil Bostrom, who is now four years of age.

"That said first party is in reality and in equity and good conscience entitled to said monthly installments for the support of herself and said daughter, and that it was the manifest intention of said Emil Bostrom that the proceeds of said adjusted compensation insurance should go to his widow and child, but on account of an error and technicality the said payments are now being made to said second party as aforesaid.

"That said Emil Bostrom was during his lifetime indebted in small amounts to second party, and said second party performed many acts of kindness and benefits during the last illness of said Emil and therefore second party is entitled to a certain portion of said monthly installments already paid to him and some in addition thereto.

"Now Therefore, it is hereby agreed between the two parties hereto that in full settlement, adjustment and satisfaction of all matters of difference and dispute between them existing on the date hereof, in the premises, that said second party have and retain as his property all of the said installments aforesaid now received by him in the sum aforesaid, but that all further, and future installments payable out of said adjusted compensation insurance be and it is hereby agreed that it is and be the property of first party and second party hereby expressly sells, assigns, transfers and sets over unto first party her heirs and assigns forever all of said installments and balance due thereunder amounting on the date hereof of approximately $3,000, and that this assignment shall be binding upon second party his heirs and assigns, or administrators, except that said second party be entitled to and he shall have as his property every other monthly installment of $19.58 for and during the term of two years from and after the date hereof being twelve monthly installments, and that the first installment to be paid

to second party hereafter shall be endorsed to and delivered to first party as and for her own property, and that the following installments shall be retained by and be the property of second party and so on until the said two-year period has expired, when all following installments and checks representing the same shall be endorsed by second party to first party and delivered to her as her own property.

"Second party further agreed that he will sign, execute and deliver to first party any necessary assignment, bill of sale or power of attorney to carry out the terms, intention and provisions of this agreement, as shall be demanded by the Veterans' Bureau at Washington, D. C. so as to cause the least annoyance to all parties hereto.

"It is further agreed and understood that this agreement shall be binding and enforced against the heirs, executors, administrators or assigns of the respective parties hereto and that the death of either or both parties hereto shall in no way affect the force or the terms hereof. "In testimony whereof Both parties have hereunto set their hands and seals the day and year first above written.

"Emma Bostrom   (Seal)

"John Bostrom   (Seal)

"Signed, sealed and delivered in presence of:

"A. R. Johanson,

"Mrs. V. F. Stoebe.

"State of North Dakota,  }
  County of Richland  } ss.:

"On this 21st day of January, 1927, before me, a notary public within and for the state of Minnesota, personally appeared Emma Bostrom and John Bostrom, to me known to be the persons described in and who executed the foregoing contract or instrument and they acknowledged to me that they executed the same as their free act and deed.

"A. R. Johanson.

———————

"A. R. Johanson, Notary Public,

"Traverse County, Minnesota.

"My Commission expires August 20th, 1931."

(Notarial Seal)

The complaint states, in paragraphic form, the controlling statements found in Exhibit "A" and further alleges that the contract was entered into "for a valuable consideration and for the payment of seven hundred dollars" to the defendant and that the defendant thereafter until February, 1929, complied with this contract and each month gave to the plaintiff the payments received from the Veterans' Bureau, but from that time refused to make further payment.

The defendant demurred to the complaint saying: first, that the court has no jurisdiction of the subject of the action; second, that there is a defect of parties defendant in that the United States is a necessary and proper party defendant; and third, that the complaint does not state facts sufficient to constitute a cause of action.

The trial court upheld the demurrer on the third ground, and the plaintiff appeals.

The first ground of demurrer is not well taken. The complaint is concerned with a contract made between the parties to this action wherein, for a valuable consideration, the defendant agreed to pay money to the plaintiff at times and in the amounts stated. An action to compel him to live up to his contract concerns a subject matter within the jurisdiction of the courts of this state.

The second point is not well taken. The United States is not a party to this agreement and is not bound thereby. There is no agreement on the part of the United States to pay the money to the plaintiff, or to be bound by any agreement made by the defendant, the designated beneficiary. The United States is not concerned with the outcome of this suit. See Calhoun v. Ussery (D. C.) 46 F. (2d) 495. Plaintiff is not seeking to establish a trust as against the United States, nor does she claim that this agreement is binding on the Veterans' Bureau.

The third point is based upon the theory that this is war risk insurance and that assignment thereof by the beneficiary is prohibited by the United States statute. The specific provision relied upon by respondent is as follows:

"Assignability and Exempt Status of Compensation, Insurance, and Maintenance and Support Allowances. The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under

Parts II, III, and IV; and shall be exempt from all taxation." U. S. C. title 38, § 454.

There is a provision attached to this section however which has bearing upon the case and which has been omitted in the briefs. The later portion of the section says:

"The provisions of this section shall not be construed to prohibit the assignment by any person to whom converted insurance shall be payable under Part III of this chapter of his interest in such insurance to any other member of the permitted class of beneficiaries."

Respondent cites numerous cases wherein it is held that such assignments are void, and argues that where an act is prohibited by statute and is therefore void the respondent cannot be compelled to perform. The error in this argument, however, is in holding that this contract is such an assignment as is prohibited by the statute quoted. "An assignment in law is a transfer or setting over of property, or of some right or interest therein, from one person to another." 2 R. C. L. 593. See Griffey v. New York Cent. Ins. Co. 100 N. Y. 417, 53 Am. Rep. 202, 3 N. E. 309. When assigned the assignee is entitled to receive the payments direct and to control the property the same as if originally owned by him. In the complaint it is alleged the Veterans' Bureau refused to make payments to the plaintiff and said "that such payments would have to be made to defendant."

The contract sets forth that when the decedent attempted to reinstate his insurance the application was rejected but that the Veterans' Bureau found "that on account of the total disability of the said Emil a certain amount of back compensation had revived to his benefit, etc." Section 516, in Part III, makes provision for such converted insurance and the payment to the beneficiary of such amount of insurance "as said uncollected compensation . . . would purchase if applied as premiums would when due" and that in that event such converted insurance "shall not be considered as lapsed." By provision of the same section "the United States Veterans' Bureau is hereby authorized and directed to pay to said soldier, or his beneficiaries, as the case may be, the amount of such insurance less the unpaid premiums. . . . Provided, that the insurance herewith revived under this section . . . by reason of permanent and total disability or by death of the insured, shall be paid only to the insured, his widow, child, or

children, dependent mother or father, and in the order named unless otherwise designated by the insured during his lifetime. . . ." Thus it was payable to the beneficiary, John Bostrom, because he was the one designated by the insured. However, this provision quoted from Section 454 does not, apparently, prevent the beneficiary from assigning the compensation "to any other member of the permitted class of beneficiaries." The plaintiff in this case, being the widow, is within the "permitted class of beneficiaries." Subsequent amendments do not appear to have changed these provisions.

It may be said, however, the Veterans' Bureau has refused to recognize the attempted assignment and therefore we must consider this law quoted not applicable to the situation.

It is not necessary to determine this feature. There is a distinction between assigning a contract and assigning the benefits arising under the contract. Even where the contract cannot itself be assigned, yet the benefits accruing to the party may be assigned. Ordinarily contracts for personal service cannot be assigned; yet where nothing remains to be done under the contract except to receive the money, such benefits may be assigned. See American Lithographic Co. v. Ziegler, 216 Mass. 287, 103 N. E. 909; Re Wright, 18 L.R.A.(N.S.) 193, 85 C. C. A. 206, 157 Fed. 544. Under the statute quoted the compensation payable is not assignable. The United States does not recognize an assignment and will not be bound by it. However, after the beneficiary has received the money, so that he may do with it as he sees fit his contract, relative thereto, may be enforced. The United States does not regard the beneficiary as a ward, nor attempt to control the disposition or expenditure of the proceeds. The proceeds cannot be assigned so as to compel the United States to pay to the assignee, nor give the assignee any claim whatever against the United States so as to hamper the latter or in any way compel it or even permit it to recognize the assignee. But the beneficiary may make his own contracts as to what he will do with the money after he gets it.

A covenant to pay a debt out of certain funds does not operate as an assignment of that fund. There is a distinction "between a promise to pay out of the fund after it goes into the hands of the promisor, and a direction to a person holder of the fund to pay it, or part of it, to another person." American Pin Co. v. Wright, 60 N. J. Eq. 147,

46 Atl. 215; Fortunato v. Patten, 147 N. Y. 277, 41 N. E. 572. The agreement set forth in the contract, even when the assignment of the receipt is forbidden, will create a personal obligation against the assignor which can be enforced. There is nothing inherently wrong in the object sought to be attained. The purpose—that is, that the widow and child should get the money coming from the government—is not invalid. It is praiseworthy. It is true plaintiff asks that defendant be compelled to turn over the particular money which he receives. Even if this may not be done yet there is an obligation on the part of the defendant to comply with his agreement—an obligation personal in itself—and under the contract affords the plaintiff a cause of action. In the case of Burck v. Taylor, 152 U. S. 634, 38 L. ed. 578, 14 S. Ct. 696, the Supreme Court of the United States had under consideration a suit in equity "for an accounting and to recover the plaintiff's share of the proceeds of a contract made with the state of Texas for the building of its capitol." While the court by a majority vote held that this action could not be maintained, and that neither the contract made by the defendant and others with the contractor for a division of the profits, nor the contract made by the plaintiff with the defendant for a division of the defendant's share could be enforced, and that the contractor was incapacitated from transferring an interest in his contract without the consent of the state, yet the court held that the nature of the contract between the contractor and others for a division of his profits "created simply a personal obligation which could be enforced against him alone." The minority held that even this contract could be enforced, but there was no division of opinion in regard to contract giving a personal right of action against the party who makes it. Thus irrespective of whether the plaintiff could compel the turning over of the identical money to her, she has the personal obligation of the defendant and can recover from him a judgment for such amount of money as he receives and which he promised to transfer. It is not the money coming to the defendant under a contract between him and the United States that is hers, but money coming to her under a contract made by the defendant. This contract, duly acknowledged by the defendant, is one wherein, for a valuable consideration, he agrees to hold certain moneys received by him from a designated source, in trust for the plaintiff and her child, recognizing the moral obligation on the part

of his deceased brother to provide for his wife and child, recognizing the delay in making a change of beneficiary and that the effort was cut short by death. This agreement is not such an assignment as is prohibited by the United States statute quoted. It is an independent contract and the parties specifically agree therein that the money due is the property of the plaintiff. This being so, in equity and good conscience defendant should give plaintiff her property. True, throughout the contract runs the idea of an assignment. We are not concerned with whether the identical check or voucher received by the United States is given to the plaintiff, or such giving is prohibited. The defendant agreed to make payments to the plaintiff at designated times and in specific amounts. There is nothing to hinder his endorsing the check in payment, or he may issue his own check, or pay in cash. The order sustaining the demurrer is reversed and the demurrer overruled.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.