S. Samuel Di Falco, S.
There are four separate actions which seek identical relief against the estate fiduciary, viz: to impress a trust; for breach of contract; for restitution. The defendant moves: (a) to dismiss each complaint pursuant to CPLB. 3211 (subd. [a], pars. 1, 5, 7) upon the grounds that a defense is founded upon documentary evidence; the actions are barred by the doctrines of collateral estoppel and res judicata and by the Statute of Limitations; and that the complaints fail to state causes of action; (b) for summary judgment. Plaintiff cross-moves for summary judgment in all four actions.
Defendant is the administratrix of the estate of Chance M. Vought, Jr. (hereinafter referred to as Chance, Jr.). Chance, Jr. ’s father died in 1930 and left a will executed that year. The father had created, by his will, trusts for the benefit of his parents, his wife and two sons, Chance, Jr. and Peter. A life income trust in favor of his widow was provided with direction that on her death the principal should be paid over in equal shares to his two sons. The will provided that ‘ ‘ the principal shall not be assignable, nor can the income or principal of said Trust funds become attached by garnishment or other legal proceedings while in the hands of the Trustees, except to the extent permitted by law.” During his and his mother’s lifetime Chance, Jr. executed a number of assignments of his interest in the remainder, three aggregating $1,100,000 and the fourth for the balance. He executed instruments purporting to be bills of sale *783 and assignments of Ms remainder interests as follows: (a) on October 27, 1959 to the Inheritance Estates Ltd. in the sum of $450,000, for wMch he allegedly received $78,750; (b) on October 27, 1959 to the Allied Investment & Discount Corp. in the sum of $150,000, subject to the prior assignment, for wMch it is alleged that $15,000 was paid; (c) on January 8, 1960 to Lex Co. Inc. in the sum of $500,000 subject to the two prior assignments ; and (d) on August 11, 1960 to Leonard P. Levy, all his interest in the principal, subject to the three prior assignments. It appears from the papers submitted that the sum of $12,000 was paid for these last two assignments.
On August 11, 1960 Lex Co. Inc. assigned all of its rights to Leonard P. Levy. Inheritance Estates Ltd., Allied Investment & Discount Corp. and Leonard P. Levy subsequently subassigned portions of their respective interests to the plaintiffs herein. Chance, Jr. died April 2, 1964 and his mother, the income beneficiary of the trust, died on October 14,1965.
In a prior decision involving the father’s estate, tMs court held that Chance, Jr.’s remainder interest was vested and that the purported assignments of the principal were void and unenforceable because the will provided that the remainder was inalienable. This decision was affirmed by the Appellate Division and the Court of Appeals. (Matter of Vought, 57 Misc 2d 396, affd. 30 A D 2d 805, affd. 25 N Y 2d 163, mot. for rearg. den. 25 N Y 2d 959.)
Thereafter plaintiffs herein instituted these four actions in Supreme Court, New York County. All the actions have now been transferred to this court on motion by the defendant. The pertinent allegations in all four actions are the same except for the parties, the amount of the respective assignments and the consideration paid. The defendant has made the same motions to dismiss and for summary judgment in all of the actions and the plaintiffs also move for summary judgment in all the actions. Accordingly, the court will treat all the motions in this decision.
By means of the first cause of action in all of the complaints, plaintiffs seek to impress a trust upon the remainder share to be received by the defendant from the trust created in the estate of Chance M. Vought, Sr. The court is of the opinion that defendant’s motion to dismiss these causes of action on the grounds that they are barred by the doctrines of res judicata and collateral estoppel must be granted. (See Matter of Vought, supra; see, also, Matter of Vought, N. Y. L. J., March 8, 1971, p. 17, col. 6 [1971] Official Decision, Surr. Ct., N. Y. County, p. 407], affd. 37 A D 2d 698, mot. for lv. to app. den. 29 N Y 2d 489.) The assignees advanced a similar argument before the *784 Court of Appeals (Matter of Vought, 25 N Y 2d 163,174). The court stated (pp. 174-175):
“ The assignees argue, however, that even if the interest in principal be deemed unassignable, the assignees should be entitled to that interest now that the trust has ended and the principal is now to be paid out. They argue that it would be inequitable to have allowed the assignor to renounce the assignment, and urge that his estate be charged with his obligation to facilitate a transfer.
* ‘ Such a result, however, would render meaningless any provision providing for inalienability of the principal for, indeed, the beneficial owner has no present interest to be protected but the right to receive the principal at a later date. If by an assignment during the life of the trust he is deemed to have transferred this sole right of later possession he has transferred virtually all his interest. Moreover, the creator’s wishes would be completely frustrated, the beneficiary not only getting the funds the creator had intended be delayed, but the beneficiary receiving a fraction, after discount, of what was eventually intended.”
The prior decision held that the assignments were void and unenforceable against the portion of the trust principal payable to the estate of Chance, Jr.
The second cause of action and the fourth cause of action in the action entitled Colligan v. Vought are for breach of contract. It is alleged that in the assignments Chance, Jr. covenanted and agreed that if the principal should come into his hands he would pay the same to the assignee and that he further agreed that the terms of this agreement were made binding upon him and his executors. Plaintiffs allege that Chance, Jr. never repudiated this agreement and that defendant has breached the agreement. It appears that as part of the instruments of assignment, Chance, Jr. agreed that if the sum assigned “ is paid to me by operation of law or by reason of the Trustee’s refusal or failure to pay the said sum directly to the said Assignee or its successors and assigns, or if for any reason whatsoever the said sum shall come into my hands, then and in such case, I shall hold the same in trust for the benefit of said Assignee, and forthwith pay the said sum over to it without further demand for direction.”
In determining whether a cause of action exists, the question is whether the instruments which have been held void and unenforceable as assignments of principal in a spendthrift trust can be held valid as contracts to assign or pay over the principal when received by the assignor or his estate. There are not many reported cases dealing with this issue. However, one New *785 York case (Bursch v. Bursch, 60 N. Y. S. 2d 633 [N. Y. City Ct.] dealt with an analogous situation and concerned a contract for the payment of the income from a spendthrift trust. In Bursch, a beneficiary of a trust, who was entitled to income for life, made a contract with his wife to pay her half the income which he should receive as beneficiary of the trust. He failed to make the payments, and it was held that he was personally liable to his wife for breach of contract, and that she could recover satisfaction out of his property the same as any other creditor. (See, also, Schrader v. Smith, 10 Misc 2d 475.)
The issue presented herein was directly considered in Kelly v. Kelly (11 Cal. 2d 356). In Kelly, a husband assigned to his wife one half of his interest in the principal of a Pennsylvania spendthrift trust. This assignment had been held ineffective by a Pennsylvania court (Matter of Smith, 13 Pa. D & C 508) because of a spendthrift clause contained in the will establishing the trust. Thereafter the wife brought an action against the husband in California seeking to impose a trust upon one half of the principal received by him or, in the alternative, for breach of contract. The court held that the wife took no interest as an assignee, but that the agreement would be given effect as a contract to assign. The wife was entitled to a judgment for breach of contract with the right to levy on any property received from the trust. It appears that in Kelly the court had previously determined that the contract was a fair one. (See Kelly v. Kelly, 129 Cal. App. 325.)
A result contrary to that of the two prior cases was reached by a Missouri court. In Bixby v. St. Louis Union Trust Co. (323 Mo. 1014), a spendthrift trust was created under which the income was payable to two persons in equal shares and after the death of either the whole of the income was to be paid to the survivor for life. It was provided that the interests of the beneficiaries should not be assignable. The two beneficiaries entered into an agreement providing that the survivor would pay part of the income he received to the trustees of the other’s will. Following the death of one of the beneficiaries the other, for a time, made the payments required under the agreement. Thereafter, a dispute arose, and the payments were deposited in escrow until the validity of the contract was determined. The lower court held the contract valid as a contract to assign the income after its receipt by the beneficiary. The Supreme Court reversed stating that there was no difference between a contract to assign and an assignment, and since an assignment would be invalid, a contract to assign is also invalid. The reasoning of the Bixby case has been criticized. (See Griswold, Spendthrift Trusts *786 [2d ed.], § 374, p. 459; 2 Scott, Trusts [3d ed.], § 152.6, _pp. 1163-1164.) There is, of course, some basis for this criticism since a contract to pay over after receipt differs from an assignment. An assignment ordinarily is limited to transfers of choses in action and to rights in or connected with property, as distinguished from the particular item of property. (See Black’s Law Dictionary, 4th ed.; Ballentine’s Law Dictionary, 2d ed.) There is no “contract to assign” a right to receive property, since once it is received and in the possession of the beneficiary, there is no longer any right to receive it. (Attempt to Assign Interest in a Spendthrift Trust, 48 Yale L. J. 666, 668.) The difference between an assignment and a contract to pay over is noted in Griswold (supra, § 372, p. 455), where it is stated: “ A contract to make an assignment or to pay over after receipt, of course, differs from an assignment, just as a conveyance of land differs from a contract to sell the same land.”
Although the agreements are ineffective and unenforceable as assignments of the principal of the trust in the hands of the trustee or when paid to Chance, Jr.’s estate, there is nevertheless an explicit promise by Chance, Jr. to pay over the principal when received by him or by his estate. We are not here required to decide whether we should infer a promise to pay from the wording of the ineffective assignment or whether a promise to pay over should be inferred from a promise to assign when the trust ended. Here we have an express promise to turn over funds if and when received by the promisor from the trustee. The question then is whether such a promise is enforceable. That question is one of public policy.
Some authorities, as we have seen, take the view that the promise to pay when received cannot reasonably be separated from the assignment or from a promise to assign and that the invalidity of the one fatally infects the other. (Bixby v. St. Louis Trust Co., 323 Mo. 1014, supra.) Other authorities regard the promise to pay when received as valid (Griswold, Spendthrift Trusts [2d ed.], §§ 372, 375; 2 Scott, Trusts [3d ed.], § 152.6, pp. 1163-1164; Restatement, Trusts 2d, § 152 Comment [k] and analogous cases; see, also, Hobbs v. McLean, 117 U. S. 567; Bostrom v. Bostrom, 60 N. D. 792; Minot v. Minot, 319 Mass. 253; Hale v. Bowler, 215 Mass. 354).
The motions to dismiss these causes of action for breach of contract upon the grounds that they are barred by res judicata, collateral estoppel, the Statute of Limitations and that a defense is founded upon documentary evidence are denied. The prior decisions held that the agreements were void and unenforceable *787 as assignments of the principal of the trust. The present causes of action are concerned with the promisor’s personal obligation to pay over the principal when received by him. The causes of action are different and the issue of Chance, Jr.’s personal obligation upon the basis of his promise to pay over the principal was not reached in any prior action or proceeding. Since the present complaints are based upon contract, the applicable Statute of Limitations is six years, measured from the date of the breach. (CPLE 213, subd. 2.) The breach did not take place until the defendant refused to pay over the principal to the plaintiffs.
It is noted that while the plaintiffs ’ complaints charge breach of contract, they have failed to properly plead the causes of action in their complaint. Plaintiffs allege a breach of contract by reason of defendant’s procurement of the trustee to refuse to pay over the principal of the trust to them. This allegation does not give rise to a cause of action. The assignments are void and the trustee was under no obligation to pay the principal to plaintiffs. The only breach giving rise to a cause of action for damages is the defendant’s refusal to pay over the principal when received. Leave to amend the complaint in this regard will be granted to the plaintiffs.
We thus come to the question as to what extent a promise to pay over the funds when received is enforceable. The defendant has raised the defense of usury, contending that such a transaction was in fact a loan and at a usurious rate of interest. Questions of fact are presented concerning the intent of the parties at the time of the transactions. (Hartley v. Eagle Ins. Co., 222 N. Y. 178.) Defendant has also pleaded the defenses of fraud and unconscionable contract. The authorities who support a cause of action on contract also support the principle that a court should enforce such a contract only if adequate consideration was given and if it was a fair agreement. (See Kelly v. Kelly, supra); Griswold, supra, § 373; Attempt to Assign Interest in a Spendthrift Trust, 48 Yale L. J. 666, 669, 670.)
It is the general rule that adult persons suffering from no disability have complete freedom of contract and courts will not inquire into the adequacy of the consideration. (Mandel v. Liebman, 303 N. Y. 88.) One eminent authority is of the opinion that expectant heirs stand in a position different from all other persons sui juris and that their contracts will not be enforced if based upon inadequate consideration. (3 Pomeroy, Equity Jurisprudence, §§ 953-954 [5th ed., 1941].) This rule appears to be based on English decisions and has not been adopted by Amer *788 ican courts. The courts do, however, look to the adequacy of the consideration in order to determine whether the bargain provided for is grossly unreasonable or unconscionable. (1 Corbin, Contracts, § 128, p. 551.) Thus, where inequality of the bargain is so gross there is an inference that it was in some way improperly obtained and is unconscionable. (Dunn v. Chambers, 4 Barb. 376; Friedman v. Hirsch, 63 Hun 630, opn. in 18 N. Y. S. 85.) Bussell D. Niles in a recent article, “ Matter of Yought’s Will: A Tighter Grip By The Dead Hand ” (45 N. Y. H. L. Bev. 421), although critical of the prior decision concerning the effect of the restraint on the assignment of the principal of the trust, does foster the belief that a modern trend of uneonscionability or economic duress should be developed to give some protection in this area. (See, also, Dawson, Economic Duress — An Essay in Perspective, 45 Mich. L. Bev. 253.) This court agrees.
‘ ‘ There is sufficient flexibility in the concepts of fraud, duress, misrepresentation, and undue influence, not to mention differences in economic bargaining power, to enable the courts to avoid enforcement of a bargain that is shown to be unconscionable by reason of gross inadequacy of consideration accompanied by other relevant factors.” (1 Corbin, Contracts, § 128, p. 551.) The courts cannot just pass off a contract as a hard bargain and be indifferent with regard to excessive and unjustified gains that are directly traceable to disparity in bargaining power. Enforcement of unjust contracts is being restrained in other areas of the law. The Legislature has seen fit to allow the courts to refuse to enforce unconscionable contracts in the area of sales. (See Hniform Commercial Code, § 2-302.) That section is intended to allow the court to pass directly on the unconscionability of a contract and to make a conclusion of law as to its uneonscionability. So, too, a loan transaction which violates the statute against usury will not be enforced by the courts. In both of these areas there is a restriction upon the freedom of contract, but there is also present an inadequacy of consideration in addition to some impairment of bargaining power.
This court agrees with the authorities that contracts such as the ones under consideration should not be enforced if supported by an inadequate consideration and if there was present a gross inequality of the bargaining power at the time they were made. This is so whether the impairment consists of economic necessity, mental or physical disability or a wide disparity of knowledge or experience.
It appears from the face of the pleadings that the consideration paid herein is inadequate. The court is of the opinion, *789 however, that these defenses of fraud and unconscionable contract raise issues upon which the parties are entitled to present evidence. Both the plaintiffs and defendant have requested additional time to gather and present evidence upon these defenses. Furthermore, although the conclusion of whether the contracts are unconscionable is a question of law, subdivision (2) of section 2-302 of the Uniform Commercial Code should be followed in this regard and the parties given opportunity to present evidence in order to prevent unfair surprise. Some of the elements to be considered with regard to these defenses are: the fair market value of Chance, Jr.’s interest in the principal of the trust at the time of the agreements, the age and physical condition of the life income beneficiary at that time, the type and quality of property representing the principal of the trust and its value at the time of the contract, the financial and economic position of Chance, Jr. and the 'general circumstances surrounding the execution of the agreements.
With regard to the third causes of action for restitution, it is alleged in all the complaints that if plaintiffs cannot enforce a trust upon the principal paid to defendant or recover damages for breach of contract, then they should recover the amounts paid to Chance, Jr. There appear to be two theories for restitution pleaded therein. The amount of money sought to be recovered is the same, but the theories of recovery are different. As previously stated, the plaintiffs allege a breach of contract based on the promise by Chance, Jr. to pay over the principal when received. In the present causes of action they allege that if these promises are unenforceable, they are entitled to restitution of the sums paid. Furthermore, it appears that plaintiffs are seeking restitution of moneys paid upon the void assignments.
A cause of action is stated insofar as restitution is sought upon the contractual theory, although there may be good defenses to it. A more serious question is presented as to whether a cause of action for restitution exists with regard to the void assignments. It may well be that the element of risk concerning the question of whether Chance, Jr. had the power to assign, in the face of the restriction contained in the will, was part of the bargain and was assumed by the assignees. (See Restatement, Restitution, § 11, subd. [1]; 13 Williston, Contracts [3d ed.], § 1543; 91 C. J. S., Vendor and Purchaser, § 51, subd. [d], par. [1].) As stated by the Court of Appeals in Matter of Vought (25 NT 2d 163,174, supra) “ the assignees suffer no loss greater than that for which they bargained on the face of the instruments with which they were dealing.” In determining the intent of the parties in this regard the court must await *790 further proof with regard to the consideration paid and the surrounding circumstances of the transaction. The motions for summary judgment by plaintiffs and defendant are denied with regard to these causes of action since issues of usury are present, along with questions of changed circumstances and fraud and unconscionable contract. (See Restatement, Restitution, § 140.) The motions to dismiss these causes of action upon the grounds of res judicata, collateral estoppel, Statute of Limitations and on the ground that a defense is founded upon documentary evidence are denied.
Lastly the defense that the action should be dismissed pursuant to SOPA 1810 since not instituted within 60 days from the rejection of the claim by defendant is without merit. There is no evidence concerning the formal presentation of the claim or the formal rejection of the claim. In any event, the action is now before this court and no purpose will be served by postponement of the issues raised to another proceeding.
Accordingly, the motions by defendant to dismiss the first cause of action in all complaints are granted and the remaining motions to dismiss and for summary judgment are denied. The cross motions for summary judgment by plaintiffs are also denied. Leave is granted to plaintiffs to amend their complaint in accord with this decision. The amended complaint shall be served within 10 days from the date of the entry of the orders to be entered herein.