**James D. MOFFAT·IV, et al.,
Appellants,**

v.

**Katherine M. LYNCH and Leonora L.
Dolan, Respondents.**

No. 63724.

Supreme Court of Missouri,
En Banc.

Dec. 3, 1982.

Rehearing Denied Jan. 11, 1983.

Frank Susman, Stephen G. Hamilton, St. Louis, for appellants.

Robert R. Schwarz, Clayton, for respondents.

SEILER, Judge.

This appeal from a trial court order sustaining respondents' motion for summary judgment was transferred to the Supreme Court on application of the appellants from the eastern district court of appeals, prior to opinion. Rule 83.06. Jurisdiction lies with this court pursuant to Art. V, § 10, Mo. Const. (as amended 1976).

Appellants' father, James Moffat III, was the brother of respondent sisters. All three siblings were the named equal income beneficiaries of a certain testamentary trust set up by their great-uncle in 1951. The trust provided that upon the death of any one of the beneficiaries, his or her portion of the net income was to be distributed equally among the survivors. The trust also contained a spendthrift clause.[1]

In 1969, James D. Moffat III and respondents entered into an agreement under which they collectively agreed that upon

---

1. The clause read:
 Neither the principal nor the income of this trust estate herein created shall be liable for the debts of said beneficiaries thereof, nor shall the same be subject to seizure by any creditor of said beneficiaries under any writ or proceeding at law or in equity, and said beneficiaries shall have no power to sell, as-

the death of any one or two of the three parties, the survivor(s) would pay to the children or other lineal descendants of the deceased party or parties either one-third[2] or two-thirds of the amount of income received as beneficiaries of the 1951 trust. The agreement expressly disavowed any attempt to modify the provisions of the testamentary trust, or assign any interest they might have as beneficiaries. Rather, the parties declared that they only intended "to make independent provision for their respective children and other lineal descendants, should they meet an untimely death" and designated the trust income as a "measurement of the benefits" to be provided for their surviving lineal descendants.

James D. Moffat III died on March 27, 1978, but his sisters refused to honor the 1969 agreement. Appellants then sought declaratory judgment to enforce the agreement. The circuit court reluctantly sustained respondents' motion to dismiss, stating,

Although not believing the same to be good law today, this court [has acted] on the sole basis of Bixby v. St. Louis Union

Trust Co., 323 Mo. 1014, 22 S.W.2d 813 (Mo.1929), by reason of the principle of stare decisis.

We are now asked to determine the continued validity of Bixby. Appellants argue alternatively that Bixby does not apply to their "agreement", since the agreement merely employs the trust as a "measure of the contractual obligation assumed" thereby, or that Bixby should be overruled as against public policy.

In Bixby, this court invalidated an agreement between trust beneficiaries providing that the survivor would pay over one-fourth of the trust income he or she received to the trustees of the other beneficiary's will. Although the beneficiary's personal obligation to pay over the agreed sum did not accrue until after receipt of the trust funds, the Bixby court held that the agreement amounted to an assignment, effectively thwarting the express intentions of the testator.[3] The court found that the "agreement" merely allowed the beneficiaries of the trust to accomplish in an indirect way what they could not accomplish directly. It observed,

at the time of his death his wife, Lucie McMillan, shall be living but no lineal descendant of his shall survive him, she, the party of the first part, will pay and account for to the said Lucie McMillan one-quarter of all the net income and revenue which she may, at any time and from time to time, receive during their joint lives from the said estate of William McMillan, deceased, promptly after the receipt of the same.

And the party of the second part hereby agrees that if he shall survive the party of the first part, he will, during his lifetime, promptly pay over and account for to the trustees of the residuary estate under her last will one-quarter of all the net income and revenue which he may, at any time and from time to time, during his life, receive from the said estate of William McMillan, deceased; or if the party of the first part shall not leave her residuary estate in trust, that he, the party of the second part, will promptly pay the said one-quarter of the said net income to the St. Louis Union Trust Company, as aforesaid, for distribution by it, from time to time, in the manner and among the persons to whom and in the proportions in which her residuary estate may be left by her said will.

sign, transfer, encumber or in any other manner anticipate or dispose of their interest in the trust estate or the income produced thereby.

Spendthrift clauses are valid in Missouri. *Electrical Workers, Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund,* 583 S.W.2d 154 (Mo. banc 1979).

2. The exact language used was as follows:

In the event of the death of any one party hereto, then the other two parties hereto shall each pay to the then living lineal descendants of such deceased party, per stirpes, one-third of the amount received by them as beneficiaries under the Trust created by the Last Will and Testament of WILLIAM M. LOUDERMAN, Deceased.

The clause used in event of death of two of the parties was to the same effect, with appropriate modifications.

3. The agreement in *Bixby* was as follows:

Now, therefore, in consideration of the premises and of the mutual covenants hereinafter set forth and of other valuable considerations from each to the other moving, the parties of the first and second parts hereby agree each with the other, as follows:

The party of the first part agrees that if she shall survive the party of the second part and

[F]or all intents and purposes, the beneficiaries, in making the agreement, *anticipated* the income to be derived from the trust estate and *disposed* of one-fourth of their respective interests therein.

*Bixby,* 22 S.W.2d at 820. Since the spendthrift clause expressly withheld from the beneficiaries any "right to *alienate, encumber or otherwise dispose of* their respective interests ... or *in any way anticipate or charge* the income to be derived therefrom" (court's italics), *Bixby* at 814, the court concluded that the agreement violated the express terms of the trust.

*Bixby* requires a court fully to invalidate any agreement to pay over trust receipts, even if those receipts have already reached the hands of the intended beneficiaries. The rule has never been followed by any other jurisdiction, and has generated extensive criticism in the treatise and law reviews.[4]

The two agreements—in *Bixby* and the present case—are virtually indistinguishable: in both the recipient agrees to pay to someone else a definite portion of the amount received under the trust. In neither, however, does the beneficiary agree to do anything until he has in his own hands the money paid over by the trust. At that point it becomes his money and, like any other money or property of his, to be done with as he sees fit. If the beneficiary were to buy a diamond ring for $5,000 on the promise that each time he received a payment from the trust he would pay the seller one-third of the amount received, or $500, whichever was smaller, until the ring was paid for, this, too, would be the equivalent of agreeing to pay a definite portion of the amount received under the trust, but this should not make the agreement invalid. "Even in a spendthrift trust the beneficiary is free to dispose of the income once it reaches his hands." *Minot v. Minot,* 319 Mass. 253, 66 N.E.2d 5, 15 (1946). In holding that an agreement to do something with money or property after it has been received by and becomes the property of the beneficiary, is invalid, *Bixby* goes too far. Implicit in spendthrift trust provisions is the idea that the settlor does not want or intend the recipient to be able to do anything with the payment before the payment thereof to him. Once the beneficiary receives the gift under the trust, whatever he or she does with it no longer constitutes anticipation of the income of the trust, even if the beneficiary uses it pursuant to an advance agreement spelling out what he would do once he got his hands on it. We agree with the thought expressed by Restatement of Trusts 2d, § 152, comment k (1959), Griswold, Spendthrift Trusts, § 372 (2nd ed. 1947), and Scott on Trusts, § 152.6 (3rd ed. 1967), all to the effect that this type of agreement is one which the beneficiary is free to make and one which should be enforced. Any recovery on the contract by the creditor or promisee comes out of the general property of the beneficiary. The promisee is not reaching the beneficiary's interest in the trust; he is reaching no more than any general creditor of the beneficiary could reach; he is not disturbing the right of the beneficiary to receive the income from the trustee.

 Spendthrift trusts, by preventing the interest of a beneficiary from being assigned by him or reachable by creditors, have been one tool by which the settlor could ensure that his or her trust purposes

---

4. *See, e.g., Kelly v. Kelly,* 11 Cal.2d 356, 79 P.2d 1059 (1938) (allowing wife to enforce judgment against defendant husband for damages equal to the trust income amount assigned); *Minot v. Minot,* 319 Mass. 253, 66 N.E.2d 5, 15 (1946) (upholding right of assignee to enforce promise of beneficiary to pay over the income from spendthrift trust once received); *In re Estate of Vought,* 70 Misc.2d 781, 334 N.Y.S.2d 720 (1973); aff'd 45 A.D.2d 991, 360 N.Y.S.2d 199 (1974) (beneficiary of spendthrift trust personally liable to assignees for breach of contract); *Schalk Chemical Company v. Commissioner,* 304 F.2d 48 (9th Cir.1962); *Cf. Bostrom v. Bostrom,* 60 N.D. 792, 236 N.W. 732 (1931) (beneficiary of an inalienable veteran's pension allowed to contract away his interest); *see also* Griswold, *Spendthrift Trusts,* §§ 372–374 (2d ed. 1947); Scott, II, *Scott on Trusts* § 152.6 (3rd ed. 1967); *Restatement of Trusts* 2d, § 152, comment k (1959); Note, 48 *Yale Law Journal* 666 (1939); Recent Cases, 23 Minnesota Law Review 110 (1938).

would be carried out, but here observance of the *Bixby* rule has deprived the beneficiaries of their power to contract. We believe we should discard *Bixby* in favor of the opposite view, the rationale for which, in addition to the authorities already cited, was well stated by the California Supreme Court when faced with a situation analogous to the instant case. The court stated:

> [A]n assignment by the beneficiary, in the nature of a promise to pay or turn over trust property when received by him, is not wholly invalid. Although such an assignment or promise gives the promisee no right in specific trust property received by the beneficiary, or in its proceeds, such promisee has available to him the usual remedies for breach of contract and may sue to recover damages for breach of said contract, in which the damages will ordinarily be the value of the property the promisee would have received had the beneficiary performed his promise to turn over a fraction of the trust property upon its receipt. Having obtained a judgment for damages, the promisee may levy upon property of the promisor not exempt from execution, including property received by him from the trust, since such property after receipt by the promisor-beneficiary, is subject to attachment and execution for debts and engagements contracted before as well as after the receipt of trust property by the beneficiary.

*Kelly v. Kelly,* 11 Cal.2d 356, 79 P.2d 1059, 1063–64 (1938). The logic resolves appellants' claim. Although James D. Moffat III's descendants may not invade the trust corpus to satisfy terms of the 1969 agreement, they have a valid contractual claim against respondents for the contractual obligation "measured" by the reapportioned trust income. That agreement imposed no obligation upon the trustee, nor did it operate as an invalid assignment of the trust income. *Bixby* having been overruled, appellants may sue for damages for breach of the agreement in question.

The judgment of the trial court is reversed, and the cause remanded for further proceedings consistent herewith.

RENDLEN, WELLIVER, HIGGINS and GUNN, JJ., concur.

DONNELLY, C.J., dissents in separate dissenting opinion filed.

BILLINGS, J., dissents and concurs in separate dissenting opinion of DONNELLY, C.J.

DONNELLY, Chief Justice, dissenting.

For me, the interjection of the *Bixby* straw-man in this case serves only to frustrate the wishes of the testator. "The trust provided that upon the death of any one of the beneficiaries, his or her portion of the net income was to be distributed equally among the survivors." With all deference to Professors Griswold and Scott, and to the California Supreme Court, testator intended that *upon the death* of James Moffat III, his portion of the net income was to be distributed equally between Katherine M. Lynch and Leonora L. Dolan. *Upon the death* of Moffat, Lynch and Dolan disavowed what was, at most, a voidable agreement.

I respectfully dissent.