**SISTERS OF MERCY HEALTH CORP., Appellant–Plaintiff,**

v.

**FIRST BANK OF WHITING, Appellee–Defendant.**

No. 45A03–9206–CV–175.

Court of Appeals of Indiana, Third District.

Dec. 2, 1993.

---

Joseph O'Connor, Hammond, for appellant-plaintiff.

David M. Austgen, O'Drobinak, Austgen & Goad, P.C., Crown Point, for appellee-defendant.

GARRARD, Judge.

## I. Facts and Procedural History

Sisters of Mercy Health Corp. filed suit against First Bank of Whiting concerning First Bank's refusal to pay debts that Clarice Christenson owed Health Corp. Summary judgment was entered in favor of First Bank. Health Corp. appeals that decision.

In May of 1970 Warren Christenson died and the two trusts he established went into effect. The trusts named his wife Clarice the primary beneficiary and First Bank the trustee in each. The trusts were created by a single instrument which contained very thorough spendthrift provisions protecting assets in the hands of the trustee from assignment by the beneficiary or the claims of creditors.

From 1977 through 1980 Clarice received medical care from several sources, including Health Corp., the bills for which were consistently submitted to and paid by First Bank. First Bank borrowed $10,000.00 in order to pay the 1980 medical bills. There is some evidence of an effort to qualify Clarice for Medicaid benefits at this time. This effort included the decision by First Bank to cease income distributions to Clarice in 1982. Income payments to Clarice resumed in 1983.

From January 22, 1981 through February 5, 1982 Clarice received medical care at Our Lady of Mercy Hospital in Dyer, Indiana. Our Lady of Mercy is owned and operated by Health Corp. Clarice's debt to Health Corp. rose to $33,948.03. On November 30, 1981 Health Corp. filed suit directly against Clarice to collect on this unpaid account. On August 7, 1985 Health Corp. obtained judgment against Clarice and subsequently named First Bank as garnishee defendant. First Bank's receipt of notice that it had been named a garnishee defendant constituted the first notice it received of this indebtedness.

A garnishment order was entered against First Bank on July 14, 1986. This judgment was reversed by the Fourth District of this court on November 9, 1989 in *First Bank of Whiting v. Sisters of Mercy Health Corp.* (1989), Ind.App., 545 N.E.2d 1134. The reversal was based upon the discharge of Clarice's indebtedness under the U.S. bankruptcy code following her filing of a voluntary petition for bankruptcy in the United States Bankruptcy Court in the Southern District of Florida on June 8, 1987.[1]

During the course of the above stated proceedings, on July 23, 1987, this action was filed by Health Corp. directly against First Bank. In its complaint Health Corp. alleged that First Bank's refusal to pay for medical services rendered to Clarice was in bad faith and was an abuse of its discretion as a trustee. When the Fourth District handed down its decision, both Health Corp. and First Bank filed for summary judgment. Summary judgment was granted in favor of First Bank. This appeal from Health Corp. followed.

## II. Issues Presented

Health Corp. presents three issues on appeal which we restate as follows:

(1) Whether the spendthrift provisions of the Christenson Trust preclude Health Corp. from recovering against First Bank.

(2) Whether First Bank abused its discretion or acted in bad faith in refusing

---

1. The Fourth District's decision does not act as a bar to these proceedings. The prior proceedings determined First Bank's liability as a garnishee based upon Clarice's debt. These proceedings, on the other hand, address First Bank's individual liability pursuant to IC 30-4-3-10(b)(1). *See First Bank* at 1141.

to pay the debt Clarice owed to Health Corp.

### III. Standard of Review

Upon review of a grant of summary judgment we apply the same standard as does the trial court: summary judgment is appropriate only if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *Babcock v. Lafayette Home Hosp.* (1992), Ind.App., 587 N.E.2d 1320, 1323. In making our decision we construe all evidence in favor of the non-movant and resolve all doubts as to the existence of a material issue against the movant. *Avco Financial Services of Indianapolis, Inc. v. Metro Holding Co.* (1990), Ind.App., 563 N.E.2d 1323, 1326, *reh. den.*

### IV. Analysis and Conclusion

Health Corp. argues that it is entitled to recover against First Bank based upon its wrongful refusal to pay Clarice's debt.[2] Primarily, Health Corp. contends that the trust's spendthrift provisions do not immunize First Bank from liability. Further, it contends that First Bank's refusal to pay was actionable by Health Corp. in that it was done in bad faith and constituted a breach of trust.

The grantor's power to create a spendthrift provision is codified at IC 30–4–3–2. On the other hand, IC 30–4–3–10 recognizes a third party's right of action against a trustee under specified circumstances.

The statute reads in pertinent part:

(b) When a third person is entitled to compensation for injury suffered in the court of the administration of the trust:

(1) If the injury is the result of the trustee's personal act or omission as trustee, the trustee will be personally liable and the injured party will be entitled to satisfaction of his claim from the trustee's individual property first and then, to the extent the claim is yet unsatisfied, from the trust estate.

We have found no case or statute precluding liability under this section when a spendthrift provision is present, although the authority and duty imposed by a valid spendthrift provision clearly impacts the obligations of the trustee in managing the trust. Clearly, an ordinary creditor of a beneficiary suffers no legal injury as the result of a trustee complying with the spendthrift provisions of the trust. What is required before a court will intervene is that a trustee has been guilty of bad faith or has in some manner abused or unreasonably exercised its discretion. *Robison v. Elston Bank & Trust Co.* (1943), 113 Ind. App. 633, 650, 48 N.E.2d 181, 187, *reh. den.*

Neither have we found any Indiana decisions expressly holding that despite a clear spendthrift provision, a trustee has the obligation to pay for necessaries furnished to or for the beneficiary. However, both *McDaniel v. McDaniel* (1964), Ind., 201 N.E.2d 215 and *Clay v. Hamilton* (1945), Ind.App., 63 N.E.2d 207 support the notion that Indiana would approve of such an obligation, and we conclude that it does. It appears to us that both public policy and, in the absence of an express direction to the contrary, the presumed intent of the settlor support that conclusion. Thus, the issue before the court becomes whether the materials before the trial court were sufficient to establish the existence of a genuine issue of fact that the bank acted in bad faith or abused or unreasonably exercised its discretion.

Through 1980 Health Corp.'s bills were paid. Its complaint alleged liability for bills incurred in 1981 and 1982. It is furthermore not disputed that Health Corp. made no request or demand for payment from the bank prior to serving upon the bank the garnishment notice after it had reduced its claim to judgment against Mrs. Christenson. In the prior suit it was established that the bank was not liable for the payment as a garnishee once Mrs. Christenson sought protection in bankruptcy. Our concern, therefore, is that window of time between the service of the proceeding

---

2. Because Health Corp. asserts personal liability on the part of the bank, we believe the view expressed in the dissent does not preclude state court jurisdiction.

supplementary and the filing of the bankruptcy.

■ When a party reduces a claim to judgment it is a long-standing principle of our law that the claim merges into the judgment. *Bryant v. Owens* (1953), 232 Ind. 237, 111 N.E.2d 804; *Whinery v. Kozacik* (1939), 216 Ind. 136, 22 N.E.2d 829; *Mut. Ben. Life Ins. Co. v. Bachtenkircher* (1935), 209 Ind. 106, 198 N.E. 81. Furthermore, even though the question of merger is not presented by counsel, it is our duty to consider it where it is presented by the record. *Bryant, supra,* 232 Ind. at 241, 111 N.E.2d at 806.

On the other hand, it has been said that the doctrine of merger is calculated to promote justice and equity and may be carried no further than the ends of justice require. 46 Am.Jur.2d, *Judgments* § 382 and citations therein. Thus, it has been held that the merger doctrine does not change the essential nature or real foundation of the claim upon which the judgment was based. *Wisconsin v. Pelican Ins. Co.* (1888), 127 U.S. 265, 291, 8 S.Ct. 1370, 1375, 32 L.Ed. 239, 46 Am.Jur.2d, *Judgments* § 391.

We believe that these considerations apply to the case at hand. That is to say, the spendthrift provisions do not preclude liability for furnishing necessaries to the beneficiary. Therefore, liability of the bank as trustee was not precluded by operation of law. It remains to be seen whether Health Corp. can establish that the trustee acted in bad faith or abused its discretion. Summary judgment was in error because the record is insufficient to negate the trustee's potential liability.

Reversed and remanded for further proceedings.

SULLIVAN, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent for these reasons:

The Majority has completely ignored 11 U.S.C. § 541 of the Bankruptcy Code. Section 541 provides in relevant part:

(a) The commencement of a case under Sections 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

\* \* \* \* \* \*

[c](2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

This means that the "restriction" being complained of by the Hospital, if one did exist, is part of the bankruptcy estate. It further means that the bankruptcy court is the proper forum for the Hospital to bring its claim along with all the other unsecured creditors. *In re Esterson* (1993), 150 B.R. 72 (Bkrtcy.M.D.Fla.)

I further dissent for the reason that the Lake County Superior Court does not have jurisdiction over this matter. Once a beneficiary of a spendthrift trust has filed for bankruptcy, the beneficiary's legal or equitable right to reach the corpus pursuant to some "restriction" is part of the bankruptcy estate. The claimed "restriction" must be litigated in the bankruptcy court. *In re Esterson, supra.* See also IND.CODE 30–4–3–2 (1988).

Previous to this appeal, the Hospital tried to initiate proceedings supplemental. *First Bank v. Sisters of Mercy Health Corp.* (1989), Ind.App., 545 N.E.2d 1134. The adverse judgment was affirmed by this Court. After being told by the bankruptcy judge that it would have to bring its action in the bankruptcy court, Hospital refused to participate in the bankruptcy proceedings. Instead, it waited until the bankruptcy proceedings were concluded and brought this action—to avoid being included with the other unsecured creditors. In Hospital's first appeal, this Court stated:

It is significant to note that the bankruptcy trustee filed a motion to lift the automatic stay to allow the Hospital's proceeding in Indiana to continue. However, after a hearing, the bankruptcy court denied this motion finding 'this matter should be heard in the bankruptcy court.' As the bankruptcy court refused to lift the stay, all actions taken by the Hospital during the stay, which began June 8, 1987, to enforce its judgment against Clarice and the Trustee, as a garnishee-defendant in proceedings supplemental, violated the stay and are void.

*Id.* at 1139.

Similarly, in the matter before us, all of the actions taken by the Hospital in the Lake Superior Court are void. Any legal or equitable interest of the debtor in bankruptcy to lift a "restriction" from the spendthrift trust was a part of the bankruptcy estate. If it existed, it existed for all unsecured creditors to share. If it is to be litigated, it must be litigated in the bankruptcy court having jurisdiction. For these reasons, I dissent.