**STATE of Missouri, ex rel., Jeremiah W. NIXON, Attorney General, State of Missouri, Respondent,**

v.

**Wade A. TURPIN, Appellant.**

**No. WD 56419.**

Missouri Court of Appeals, Western District.

Submitted March 2, 1999.

Decided June 8, 1999.

---

Elizabeth U. Carlyle, Lee's Summit, for Appellant.

Virginia H. Murray, Asst. Atty. Gen., Jefferson City, for Respondent.

Before SMART, P.J., HANNA and LAURA DENVIR STITH, JJ.

SMART, Presiding Judge.

Wade A. Turpin appeals the trial court's order that ninety percent of the income distributions Turpin receives from a trust be paid to the state as reimbursement for the cost of his incarceration. The judgment of the trial court is vacated to the extent that it purports to order the trustee to distribute all the net income in the trust. The judgment of the trial court is affirmed in all other respects.

## Factual Background

Turpin was sentenced to the custody of the Missouri Department of Corrections on February 25, 1985, following his convictions of two counts of sodomy and two counts of child abuse. On January 30, 1998, the Attorney General of the State of Missouri filed an action against Turpin under the Missouri Incarceration Reimbursement Act ("MIRA"), § 217.825 through 217.841, RSMo 1994,[1] seeking to have Turpin's assets applied to the cost of

---

1. All statutory references are to the Revised Statutes of Missouri, 1994, unless otherwise indicated.

his incarceration. Specifically, the state sought to recover the cumulative cost of Turpin's care while incarcerated, from income payable to Turpin from a trust account of which Turpin is a beneficiary. Since the time of his incarceration, beginning in 1993, the trustee, United Missouri Bank, N.A. ("UMB"), has made twenty-nine separate quarterly deposits of the trust's income into Turpin's prison account, totaling $21,611.07. Between March 1997 and March 1998, the net annual income earned by the trust was $3,177.39. The state's petition sought the payment of ninety percent of this amount as reimbursement, and sought an order directing the inmate treasurer to pay over to the state ninety percent of each distribution from the trust to Turpin's prison account until reimbursement is made in full.

Turpin filed a response to the state's petition on April 14, 1998. In his response, Turpin argued that the trust was a discretionary trust as well as a spendthrift trust, and because he had "no absolute right to such payments," the trust was not an asset under MIRA.

A hearing on the matter was held on May 28, 1998. On June 15, 1998, the court issued detailed findings of fact and conclusions of law.[2] The court concluded that the trust was not discretionary as to the payment of "necessaries," and that "necessaries" were what the state was seeking reimbursement for. Further, the court concluded that to the extent that the trust was a "spendthrift trust," the exception for the suppliers of "necessaries" applied.

The court ruled that the trust's net income was an asset under MIRA and consequently, ninety percent of the annual income ($2,700.00) was available to the state as reimbursement. Mr. Rodney Kueffer, inmate treasurer of the Missouri Department of Corrections, was ordered to pay ninety percent of each disbursement of the trust's income over to the state. The remaining ten percent was to be left in Turpin's prison account.

## MIRA

In 1988, the State of Missouri enacted MIRA, §§ 217.825 through 217.841, RSMo, 1994, as a means of reimbursing the state for the cost of caring for and maintaining prisoners in the Missouri Department of Corrections ("MDOC"). Under MIRA, every prisoner must complete a department form in which the prisoner lists, under oath, his or her assets.[3] § 217.829, RSMo 1994. The form is then forwarded to the attorney general, along with an estimate of the total cost of caring for that prisoner. § 217.831.1, RSMo 1994. After investigating the prisoner's form, the attorney general may, subject to some restrictions, seek reimbursement for the state's expense in caring for the prisoner. § 217.831.3, RSMo 1994. No more than ninety percent of the value of the prisoner's assets may be paid to the state as reimbursement, § 217.833.1, RSMo 1994, and the total amount of reimbursement sought may not exceed the cost of caring for the prisoner while the prisoner is confined in the MDOC. § 217.833.2, RSMo 1994.

**2.** On July 15, 1998, the Court issued amended findings of fact and conclusions of law. This amended version did not substantially change the court's original order, but rather merely substituted the word "income" for the word "interest" and changed its reference as to the frequency of the trustee's disbursements from "monthly" to "quarterly." We review the July 15, 1998 order and judgment on this appeal.

**3.** "Assets" include "property, tangible or intangible, real or personal, belonging to or due

an offender or a former offender, including income or payments to such offender from social security, workers' compensation, veterans' compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever ...." 217.827(1)(a), RSMo 1994. "Assets" do *not* include the offender's homestead, up to $50,000 in value, or money the offender has saved from wages paid while he or she was confined in the MDOC, up to $2,500.00. § 217.827(1)(b), RSMo 1994.

## The Trust

In March 1965, Leroy S. Turpin ("Father") executed his last will and testament, which established the trust now at issue. Article IV.C.2.(a) of Father's will provides:

> The share created for my son, WADE ARTHUR, shall constitute a separate trust estate, and the Trustee shall manage, invest and reinvest the same, collect the income therefrom and pay over to my son, WADE ARTHUR, all of the net income of his separate trust, not less often than quarter-annually, during his life. . . .

Paragraph B of Article V[4] provides in pertinent part:

> Whenever the beneficiary of any trust hereunder shall be under a legal disability or, in the sole discretion of the Trustee, shall, for any reason be unable to apply any payments which he is entitled to receive hereunder to his or her own best advantage, the Trustee—
>
> 2. may withhold part or all of such payment . . . as, in the sole judgment of the Trustee, shall exceed the amount needed to provide for the suitable care, support, maintenance, education and welfare of such beneficiary, taking into consideration the needs of anyone dependent upon such beneficiary and all other funds available to him of which the Trustee shall have knowledge; and any income so withheld shall be added to the principal of the trust estate from which it was derived.

4. Turpin also argues that Article V, paragraph A of Father's will is pertinent to his case. That paragraph provides:

> If at any time, in the sole judgment of the Trustee, the aggregate of the income and principal payable hereunder, and the funds available from all other sources,—
>
> 2. to any child of mine, while a beneficiary, shall be insufficient to provide adequately for the care, support, maintenance, education and comfort of such child, . . . the Trustee may pay to or for the benefit of said . . . beneficiary, from the principal of any trust estate created or then held for her or his benefit, such amounts as the Trustee,

Father's trust also contains the following spendthrift provision:[5]

> To the extent permitted by law, none of the beneficiaries hereunder shall have any power to dispose of or to charge by way of anticipation or otherwise, any interest given to such beneficiary; and all sums payable to any beneficiary hereunder shall be free and clear of debts, contracts, alienations and anticipations of such beneficiary, and of all liabilities for levies and attachments and proceedings of any kind, at law or in equity, and, in the case of a married woman, free from the control of her husband.

## Standard of Review

We review all of Mr. Turpin's points on appeal under the standard enumerated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be upheld unless it is not supported by substantial evidence, it erroneously declares or applies the law, or it is against the weight of the evidence. *Id.*

## Trustee's Discretion

In Turpin's first two points on appeal, he claims that the trial court erred in entering judgment for the state because the income from the trust is not an "asset" under MIRA. MIRA defines "assets" as "property, tangible or intangible, real or personal, *belonging to or due an offender* . . . from any other source whatsoever." § 217.827(1)(a), RSMo 1994 (emphasis added). Turpin contends that because he is

> in its sole discretion, shall deem advisable for such purpose. . . .

In this case, the State is attempting to collect from Turpin's income interest, not the principal of the trust. Therefore, this paragraph, which gives the trustee a discretionary right to invade the trust's principal for the benefit of the beneficiary, is not relevant to the case presently before us.

5. Spendthrift trusts are valid in Missouri. *Electrical Workers Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund*, 583 S.W.2d 154, 157 (Mo. banc 1979).

under a legal disability, under Article V.B.2 of Father's trust, the distribution of income is now discretionary and he has no absolute right to receive the income. Turpin further contends that because he does not have an "undisputed right" to receive the income, the trust income "is not 'due' him, and does not provide a 'current stream of income.'" In other words, Turpin wants to continue receiving the distributions of income, and wants the trustee to continue to exercise its discretion to determine that the distributions are necessary for his suitable care, support, maintenance, education and welfare, but he wants to use the contention that there is discretion involved as a shield to prevent the state from receiving any of the proceeds distributed. Because of the overlapping nature of Turpin's contentions, we shall consider them together.

■ Whether trust income is available to or due a beneficiary depends on the grantor's intent. *Missouri Div. of Family Servs. v. Wilson*, 849 S.W.2d 104, 107 (Mo. App.1993).

> In construing wills, the familiar rule prevails that they are to be construed as a whole; liberally construed; construed with reference to the intention of the testator; and unless that intention, if carried out, will violate some positive rule of law, or subvert some rule of public policy, such intention must be allowed to control, and be effectuated by the courts. And, in construing wills which create trusts, the same liberality of construction as to such trusts prevails.

*Partridge v. Cavender*, 96 Mo. 452, 9 S.W. 785, 786 (1888).

Turpin interprets Article V.B.2 as allowing "the trustee [to] withhold payments whenever it decides that Mr. Turpin is unable to apply the distribution to his best advantage." Further, Turpin argues that because he is imprisoned, he is under a "legal disability." [6] Consequently, Turpin concludes that "the trustee has the sole discretion to distribute income from the trust to Mr. Turpin. For that reason, the trust is a discretionary trust."

■ The language of Article V.B.2 is clear. Upon determining that Turpin suffers from a legal disability or that Turpin would be unable to apply the distribution to his own best advantage, the Trustee may withhold any part of the income distribution which the Trustee believes would *exceed* the amount necessary to provide for "the suitable care, support, maintenance, education and welfare" [7] of Turpin. Therefore, according to Article V.B.2, the determination of the amount necessary for Turpin's "suitable care, support, maintenance, education, and welfare" is within the trustee's sole discretion. Once the trustee determines the amount necessary for Turpin's "suitable care, support, maintenance, education, and welfare," the distribution of that amount is mandatory. The trustee's only discretion is in determining the amount which *exceeds* the amount necessary for Turpin's care, support, maintenance, education and welfare.

■ Thus far, the trustee has exercised its discretion to distribute all of the net income to Turpin through his inmate account. Turpin has regularly spent the funds for various items, including food, books, entertainment and catalog purchases. We assume the trustee will con-

---

**6.** Being under a legal disability includes being "within the age of majority or of unsound mind or imprisoned." § 1.020(18), RSMo 1994.

**7.** The terms "care, support, maintenance, education and welfare" are broad, general terms, *Shelton v. McHaney*, 343 Mo. 119, 119 S.W.2d 951, 956 (1938), and would appear to incorporate concepts which are considerably more broad than the food and health care which state law mandates be provided to prisoners. "All offenders confined in correctional facilities shall be supplied with a sufficient quantity of wholesome food." § 217.240, RSMo, 1994. The State also "shall arrange for necessary health care services for offenders confined in correctional facilities...." § 217.230, RSMo 1994.

tinue to decide such distribution is necessary. However, the evidence does not mandate the conclusion that all of the net income will always be determined by the trustee to be necessary for Turpin's "suitable care, support, maintenance, education, and welfare." Courts should not serve as legal advisers to trustees. *McEntee v. Halloran,* 391 S.W.2d 266, 268 (Mo.1965). The trustee is required to exercise its own discretion. It is not the job of the trial court to substitute its discretion for that of the trustee. Where a trustee, as in this case, is given discretion with respect to the exercise of a certain power, "the exercise of such discretion is not subject to judicial control except to prevent an abuse of discretion." *Clark v. Mississippi Valley Trust Co.,* 360 Mo. 452, 228 S.W.2d 808, 812 (1950). Here, there has been no showing of an abuse of discretion, and it cannot be said, as a matter of law, that the trustee cannot decide that some of the net income is not necessary for Turpin's "suitable care, support, maintenance, education, and welfare." Therefore, we disagree with the trial court's view that it is entitled to determine that all of the net income necessarily must be determined to be payment of "necessaries."

In the present case, the trial court's order states:[8]

IT IS, THEREFORE, ORDERED that:

1. Rodney Keuffer continues as receiver for any and all funds held on behalf of defendant.

2. United Missouri Bank shall transfer 100% of the net income earned on the Trust's assets at 3–month intervals from the date of this Order to the receiver, Rodney Kueffer, inmate treasurer of the Missouri Department of Corrections ... for deposit into defendant Wade A. Turpin's inmate account.

3. Rodney Kueffer shall then immediately pay from this account ninety percent (90%) of this deposit for payment of cost of care for defendant incurred by plaintiff, to the State of Missouri Attorney General's Office.... The Court orders and directs that the receiver, without further order from this Court, remit to the State ninety percent (90%) of each monthly deposit for payment of the costs of incarceration of defendant within the Department of Corrections.

To the extent that the court's order simply assumes that the trustee will continue to exercise its discretion to distribute all the net income, as it has in the past, the court's order arguably does not infringe the trustee's discretion. However, we believe the trial court's order is properly interpreted as *requiring* the trustee to distribute all of the net income to Turpin. The trustee would thus not be allowed discretionary determination of the amount necessary for Turpin's "suitable care, support, maintenance, education, and welfare." To the extent that the trial court's order mandates a quarterly distribution of all the net income by the trustee, we conclude the trial court has exceeded its jurisdiction and the order is void. At the same time, to the extent that the trustee determines, in its sole discretion, that a distribution of the trust income is necessary for the Turpin's "suitable care, support, maintenance, education and welfare," the trial court is entitled to direct that ninety percent of such distribution be paid to the state. Once the trustee's discretion has been exercised, the proposed distribution is "due" Turpin within the meaning of MIRA. Once the distribution has been made to the inmate treasurer, it may be considered property "belonging to" Turpin, or again as property "due" Turpin

---

**8.** Following the trial court's judgment, the trustee called to the court's attention the fact that the will provides that distributions are to be quarterly, not monthly, and that the trust requires distributions only of *"net* income," not *"income."* The trustee and the state jointly requested modification of the judgment to reflect these discrepancies. The trial court then amended its order. At no time did anyone other than Turpin take the position that the trustee was not required to distribute the net income.

within the meaning of MIRA. Thus, a proposed or actual distribution becomes an asset for purposes of MIRA; and ninety percent of that distribution shall be paid to the State of Missouri as reimbursement under MIRA, for the cost of Turpin's incarceration in accordance with the trial court's order of July 15, 1998.

## Spendthrift Provision

■ In his final point on appeal, Turpin claims that the trial court erred in ordering funds paid to the state because the trust is a spendthrift trust. Turpin also argues that the trial court's reliance on the notion that payments in his case fall within the exception for "necessaries" violates § 456.080.2, in that the exception for providers of necessities does not apply where the provider of the necessities has a statutory duty to do so.[9]

■ Section 456.080.2, RSMo 1994, provides: "The settlor may provide in the terms of the trust that the interest of a beneficiary may not be either voluntarily or involuntarily transferred *before* payment or delivery of the interest to the beneficiary by the trustee." (emphasis added). Generally, spendthrift trusts prevent the alienation of trust property a beneficiary is entitled to receive only until the beneficiary actually receives the property or the beneficiary's right to receive the property accrues. *Moffat v. Lynch,* 642 S.W.2d 624 (Mo. banc 1982) and 76 Am. Jur.2d *Trusts* § 143 (1992).

■ "Implicit in spendthrift trust provisions is the idea that the settlor does not want or intend the recipient to be able to do anything with the payment before the payment thereof to him." *Moffat,* 642

S.W.2d 624, 626 (Mo. banc 1982). Even in the case of a spendthrift trust, once the beneficiary receives the income, the beneficiary is free to dispose of it without repercussion from the trust document. *Id.* Consequently, it is property that is "owned by" the beneficiary, or "due" the beneficiary, within the meaning of MIRA.

Once the trustee determines that a distribution is necessary for Turpin's care, support, maintenance, education and welfare, and that distribution is "due" Turpin, the spendthrift provision does not shield the distribution from the state's reach. Thus, the trial court's order in no way conflicts with the spendthrift provisions of the trust.

## Conclusion

The trial court's order is affirmed in part and vacated in part. To the extent that the trial court's order preempts the trustee's discretion in determining whether a distribution is necessary for Turpin's care, support, maintenance, education or welfare, the order is void, and is vacated to that extent. The balance of the trial court's order is affirmed. So long as the trustee, in its sole discretion, determines that a distribution of the net income is necessary for Turpin's suitable care, support, maintenance, education or welfare, ninety percent of that distribution is required to be paid to the State of Missouri, in accordance with the trial court's order.

HANNA and LAURA DENVIR STITH, JJ., concur.

---

9. In its order, the trial court stated:

5. To the extent the trust is a spendthrift trust, the exception for claims of creditors who supply necessities applies. Pursuant to this exception, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary for services rendered or necessary supplies furnished to the beneficiary. *Restatement (Second) of Trusts,* § 157(b); *Cooper v. Car-*

*ter,* 145 Mo.App. 387, 129 S.W. 224 (1910). *See also Sisters of Mercy Health Corp. v. First Bank of Whiting,* 624 N.E.2d 520 (Ind. App.1993) (Trustee ordered to pay hospital for necessaries furnished to beneficiary); *State of Texas v. Rubion,* 158 Tex. 43, 308 S.W.2d 4 (1957) (Trustee required to pay interest to State of Texas for support and maintenance of beneficiary, who was an "inmate" at a state hospital.)