

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI, EX REL.,
CHRIS KOSTER, ATTORNEY
GENERAL,

        **Appellant-Respondent,**

v.

MARK BAILEY,

        **Respondent-Appellant.**

WD78947 and
WD78982

OPINION FILED:

May 24, 2016

---

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable Daniel Richard Green, Judge**

**Before Division Three:
Gary D. Witt, P.J., James Edward Welsh, and Anthony Rex Gabbert, JJ.**

The State of Missouri appeals the circuit court's judgment in its lawsuit against Mark

Bailey, a Missouri prison inmate, seeking reimbursement for the cost of Bailey's incarceration.

Bailey cross-appeals. We affirm in part and reverse and remand in part.

## Background

Mark Bailey began serving a seven-year prison sentence in September 2010. In August

2013, after discovering that Bailey had substantial assets, the State brought a cause of action

pursuant to the Missouri Incarceration Reimbursement Act ("MIRA"), §§ 217.825-.841, RSMo,[1]

---

[1]Statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2012 Cumulative
Supplement.

seeking reimbursement for the expenses incurred, and to be incurred, for Bailey's incarceration. The cause was tried to the circuit court on January 12, 2015.

At trial, the parties stipulated to the admission of Exhibits A through G, which established that Bailey was incarcerated and had assets subject to MIRA.[2] The record on appeal submitted by the State includes only Exhibits B and F, which the parties agree are the only exhibits that are pertinent to this appeal.

Exhibit B is a copy of Bailey's deposition. It indicates that Bailey was divorced from his wife, Glenda Bailey, in 2011, and that Glenda[3] was awarded certain real property, with an obligation to maintain and sell it, and to pay Bailey one-half of the net proceeds. Glenda also agreed to pay and deduct Bailey's legal expenses from his share of the proceeds. Bailey further testified that he and his sister, Beth, are co-owners of an account at United Missouri Bank.

Exhibit F is a copy of a Charles Schwab statement for a "Contributory" individual retirement account ("IRA") in Bailey's name for the period of September 1-30, 2014. The statement shows an ending balance of $277,877.27. The circuit court found (and the parties do not dispute) that, under the Baileys' divorce decree, 50% of the IRA account was awarded to Glenda, less offsets for her own contributory IRA and 401(k) plan. No evidence was presented as to the value of Glenda's share of the Schwab account.

At trial, counsel for the State asserted that, having established that Bailey is incarcerated in the Department of Corrections and that he has substantial assets, the State asks "for a

---

[2]Exhibit A was a Missouri Department of Corrections "face sheet" showing that Bailey was incarcerated at the time of trial. Exhibit B was Bailey's deposition. Exhibit C was a statement showing that Bailey's ex-wife, Glenda, received net proceeds of $84,426.57 from the sale of the couple's real property. Exhibit D was a statement from Glenda stating that Bailey is due $30,074.79 from that sale. Exhibit E was a letter from UMB Bank indicating the existence of an account titled in the names of Bailey and his sister, Beth, with a balance of $11,152.58. Exhibit F is an account statement for a contributory IRA in Bailey's name. Exhibit G was a copy of the divorce decree.

[3]We refer to Glenda Bailey by her first name simply for the sake of brevity. No disrespect is intended.

2

judgment requiring [Bailey] to help pay for those [incarceration] costs under [MIRA]."[4] Counsel argued for a judgment attaching Bailey's IRA so that, when Bailey begins receiving funds from it, those funds can be applied to reimburse the State.

The circuit court entered judgment in favor of the State for 50% of the funds that Bailey is owed from his ex-wife Glenda and 50% of his share of the funds in the UMB bank account, for a total of $16,575.55. The court concluded that Bailey's IRA is excluded from a MIRA judgment on federal pre-emption grounds. The court found that MIRA is in direct conflict with, and thus pre-empted by, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1191c.[5] Pursuant to 29 U.S.C. § 1056(d)(1), "pension plans" under the purview of ERISA "may not be assigned or alienated." Here, the circuit court found that § 1056(d)(1) is applicable to IRAs, and, thus, a MIRA judgment attaching Bailey's IRA was forbidden by ERISA.

In a post-trial motion, the State argued that the circuit court erred in applying ERISA's anti-alienation provision to Bailey's IRA because IRAs are specifically excluded from ERISA coverage. The State asked the court to amend the judgment to include Bailey's IRA as an asset subject to MIRA. Alternatively, the State argued that Bailey failed to produce any evidence to show that his IRA fell within ERISA's coverage, and thus the court should grant a new trial. The State's post-trial motion was denied by operation of law.

### Standard of Review

Our review of this court-tried case is governed by the standard in *Murphy* v. *Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), under which we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously

---

[4]The day after trial, the State filed a document detailing Bailey's incarceration costs to date of $78,453.67.

[5]ERISA contains an express pre-emption clause at 29 U.S.C. § 1144(a), which states that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

3

declares or applies the law. *State ex rel. Nixon v. Griffin*, 291 S.W.3d 817, 819 (Mo. App. 2009). We review issues of law *de novo. Id.*

In a case such as this, where the circuit court did not observe witness testimony but instead reviewed depositions and documentary evidence, the Missouri Supreme Court has explained that the reviewing court

> defers to the trial court as the finder of fact in determinations as to whether there is substantial evidence to support the judgment and whether that judgment is against the weight of the evidence, ***even where those facts are derived from pleadings, stipulations, exhibits and depositions***.

*MSEJ, LLC v. Transit Cas. Co.*, 280 S.W.3d 621, 623 (Mo. banc 2009) (emphasis added). "In other words, even though this Court has the same opportunity to review the evidence as does the circuit court, the law allocates the function of fact-finder to the circuit court." *Id.*

Likewise, in *State v. Williams*, this Court explained that the trial court's findings of fact are entitled to deference even where they are based on physical or documentary evidence which is equally available to an appellate court. 334 S.W.3d 177, 181 (Mo. App. 2011) (citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 573-74 (1985)). The *Anderson* Court explained the justification for deferring to the trial court's factual findings when those findings are based on "physical or documentary evidence or inferences from other facts":

> The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. . . . [T]he trial on the merits should be the "main event . . . rather than a tryout on the road."

*Id.* at 181-82 (quoting *Anderson*, 470 U.S. at 574-75 (internal citations omitted)).

4

**MIRA Statutory Overview**

The State of Missouri enacted MIRA, §§ 217.825-.841, as a means of obtaining reimbursement for the cost of caring for and maintaining prisoners in the Missouri Department of Corrections. *State ex rel. Nixon v. Turpin*, 994 S.W.2d 53, 55 (Mo. App. 1999). "The procedure in the MIRA for reimbursement is similar to an attachment proceeding." *State ex rel. Nixon v. Peterson*, 253 S.W.3d 77, 82 (Mo. banc 2008).

Under MIRA, every prisoner must complete a form listing, under oath, his or her assets. § 217.829. The form is forwarded to the attorney general, along with an estimate of the total cost of caring for the prisoner. § 217.831.1. Section 217.831 dictates the procedure the attorney general must follow prior to filing a petition for reimbursement, beginning with an investigation of an offender's assets. § 217.831.2. After completing the investigation, the attorney general may file a petition for reimbursement against an offender if he has

> good cause to believe that an offender . . . has sufficient assets to recover not less than ten percent of the estimated cost of care of the offender or ten percent of the estimated cost of care of the offender for two years, whichever is less, or has a stream of income sufficient to pay such amounts within a five-year period. . . .

§ 217.831.3. Upon receiving a MIRA petition, the court must issue an order to the prisoner to show cause as to why the petition should not be granted. § 217.835.2. At the hearing on the State's petition, the State must prove that the offender (1) is incarcerated in a state correctional facility and (2) has assets that could be used for reimbursement, in order to establish a *prima facie* case. *State ex rel. Nixon v. Hughes*, 281 S.W.3d 902, 907 (Mo. App. 2009). If the circuit court finds that the offender has assets that ought to be subjected to MIRA, the court shall issue an order requiring any person or entity having possession or custody of such assets "to appropriate and apply such assets" to satisfy the claim. § 217.835. 3. No more than ninety percent of the value of those assets may be paid to the State as reimbursement. § 217.833.1.

5

**Discussion**

In its sole point on appeal, the State argues that the circuit court erred in holding that MIRA is pre-empted by ERISA with respect to Bailey's IRA, because ERISA's anti-alienation provision at 29 U.S.C. § 1056(d) does not apply to IRAs; consequently, there is no conflict between MIRA and ERISA and, thus, no ERISA pre-emption as to Bailey's IRA.

In ruling on the IRA issue, the circuit court found that Bailey's IRA falls within MIRA's broad definition of "assets."[6] But the court noted that "[t]he real issue . . . is whether federal law pre-empts Missouri law, so as to prevent this Court from issuing an order" under section 217.835. The court concluded that federal law pre-empts Missouri law on this issue, stating:

> The provisions of Subchapter 1 of the Employee Retirement Income Security Act [ERISA] are applicable to IRA accounts. *Boggs v. Boggs,* 520 U.S. 833, 844-45 (1997). Those provisions include 29 USCA § 1056(d), which provides that, with the exception of qualified domestic relations orders, benefits may not be assigned or alienated. Section 1056(d) has been interpreted by the Courts, and in IRS regulations promulgated in accordance therewith, to preclude "attachment, garnishment . . . or other legal or equitable process." *Travelers Ins. Companies v. Fountain City Federal Credit Union,* 889 F.2d 264, 266 (11th Cir. 1989); 26 C.F.R. § 1.401(a)-13. The account is therefore protected from execution under federal law. *State ex rel. Nixon v. McClure,* 969 S.W.2d 801 (Mo. App. 1998); *Hatfield v. Cristopher,* 841 S.W.2d 761 (Mo. App. 1992). See also, *State ex rel. Nixon v. Mahmud,* 11 S.W.3d 718 (Mo. App. 1999) (distinguishing between IRA funds which are *payable,* and thus exempt, and those *which have already been paid,* and are not exempt).

The court ultimately held that, because section 217.835 would require an order directing the IRA custodian to pay funds in satisfaction of the State's claim -- "exactly what is prohibited by federal law" -- the conflicting state statute is pre-empted by ERISA, citing *Boggs,* 520 U.S. at 844.

---

[6]Section 217.827(1)(a) defines "assets" as

property, tangible or intangible, real or personal, belonging to or due an offender or a former offender, including income or payments to such offender from Social Security, workers' compensation, veterans' compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever, including . . . [a] current stream of income from any source whatsoever, including . . . retirement, pension [or] similar payments[.]

6

The State argues on appeal that, although the circuit court correctly held that Bailey's IRA fell within MIRA's broad definition of "assets," it erred in concluding that the IRA was protected by the anti-alienation provision in section 1056(d) of ERISA and that the resulting conflict between Missouri law and federal law required pre-emption.

We agree that the circuit court erred as a matter of law in this regard. When read in conjunction with the rest of ERISA, it is clear that section 1056(d) is not applicable to Bailey's IRA. ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), in Subchapter I, Part 2, "applies exclusively to pension plans." *Elec. Workers, Local No. 1 Credit Union v. IBEW-NECA Holiday Trust Fund*, 583 S.W.2d 154, 159 (Mo. banc 1979). Specifically, it provides that "[e]ach **pension plan** shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). A "pension plan" is defined in Subchapter I at 29 U.S.C. § 1002(2)(A) as a plan "established or maintained by an employer or an employee organization, [that] provides retirement income to employees, or . . . results in a deferral of income by employees[.]"

"An IRA is not established or maintained by an employer or employee organization. It is self-funded by an individual for the exclusive benefit of that individual or that individual's beneficiaries." *In re Barlage*, 121 B.R. 352, 354 (Bankr. D. Minn. 1990) (citing 26 U.S.C. § 408).[7] In fact, section 1051 of Subchapter I, Part 2, contains express language excluding IRAs from coverage: "This [Part 2] shall apply to any employee benefit plan described in section 1003(a) . . . other than . . . (6) an individual retirement account or annuity described in section

---

[7]IRAs are tax-deferred savings plan accounts created under the authority of 26 U.S.C. § 408(a) of the Internal Revenue Code. *In re Lamb*, 179 B.R. 419, 422 (Bankr. D. N.J. 1994). The pertinent portion of § 408(a) states: "For purposes of this section, the term 'individual retirement account' means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries. . . ." "[A]n IRA is a savings account with tax benefits and gratuitous contributions by the [employee] rather than a plan or policy provided by an employer or other party; . . . the [employee] has complete control over the account. . . ." *In re Peeler*, 37 B.R. 517, 518 (Bankr. M.D. Tenn. 1984).

408 of Title 26. . . ."[8]  Section 1056 is a subdivision of **Part 2**; thus, section 1056(d)(1) does not

apply to an IRA described in section 408 of Title 26, such as Bailey's.  The federal regulations

applicable to ERISA confirm this.  Regulation 29 C.F.R. § 2510.3-2(d)(1) provides:

> For purposes of title I of [ERISA] and this chapter, the terms "employee pension
> benefit plan" and "pension plan" shall not include an individual retirement
> account described in section 408(a) of the [Internal Revenue] Code. . . .

Thus, it is clear that, in adopting this statutory and regulatory plan, Congress intended to exclude

IRA's from ERISA's anti-alienation protection in section 1056(d)(1).

Consistent with the foregoing statutory scheme, a number of federal courts have

explicitly held that IRAs are excluded from ERISA coverage, most notably the United States

Supreme Court in *Patterson v. Shumate*, 504 U.S. 753 (1992).  *Patterson* provides that:

"[P]ension plans that qualify for preferential tax treatment under 26 U.S.C. § 408 (individual

retirement accounts) are ***specifically excepted*** from ERISA's antialienation requirement."  *Id*. at

762-63 (citing 29 U.S.C. § 1051(6)) (emphasis added).  Other federal courts are in accord.  *See,*

*e.g., U.S. v. Vondette*, 352 F.3d 772, 775 (2d Cir. 2003) (ERISA's anti-alienation provisions "do

not purport to apply to IRAs"), *vacated on other grounds*, 543 U.S. 1108; *Goldblatt v. F.D.I.C.,*

105 F.3d 1325, 1329 (9th Cir. 1997) ("29 U.S.C. § 1051(6) specifically exempts pension plans

that qualify as IRAs under 26 U.S.C. § 408 from ERISA's anti-alienation requirement") (citing

*Patterson,* 504 U.S. at 762-63); *VFS Fin., Inc. v. Elias-Savion-Fox LLC*, 73 F.Supp.3d 329, 341

(S.D.N.Y. 2014) (anti-alienation provision is in Part 2 of Title I of ERISA; ERISA excludes IRAs

from *all* of Part 2); and *Barlage*, 121 B.R. at 354 ("the definition portion of ERISA expressly

excludes IRAs from coverage under ERISA").

---

[8]ERISA's § 1003(a) provides, with regard to "coverage" of Subchapter I, that "[e]xcept as provided in . . . section[] 1051 . . . this subchapter shall apply to any employee benefit plan if it is established or maintained . . . by any employer[; or] by any employee organization or organizations representing employees [.]"

8

Based on the foregoing authorities, we conclude that the IRA at issue here is expressly excluded from coverage under ERISA; thus, the pre-emption language in § 1144 of ERISA does not apply, and MIRA is not pre-empted by ERISA as to IRAs. *See Barlage*, 121 B.R. at 354.

In finding that Bailey's IRA account is protected by ERISA, the circuit court relied on *Boggs v. Boggs,* 520 U.S. 833, 844-45 (1997). But *Boggs* was about whether ERISA pre-empted Louisiana's community property laws with regard to a husband's undistributed retirement benefits established by his employer. *Id*. at 835-36. Those benefits included a retirement savings plan (which Mr. Boggs received as a lump-sum distribution upon his retirement and rolled over[9] into an IRA); shares of stock from the company's employee stock ownership plan; and a monthly annuity payment. *Id*. at 836. Mr. Boggs' first wife, who died six years *before* his retirement, left a testamentary gift of her community property interest in her husband's undistributed retirement benefits to her sons. *Id*. at 836-37. Following Mr. Boggs' death, the sons contested his second wife's rights to Mr. Boggs' pension/retirement benefits. *Id*. at 837. The sons claimed that their mother's testamentary gift vested ownership of a portion of the benefits in them. *Id*.

The *Boggs* Court found that the first wife's purported testamentary transfer of her interest in Mr. Boggs' undistributed benefits from his employer's retirement plans violated ERISA's "anti-alienation" provision in 29 U.S.C. § 1056(d)(1). *Id*. at 851. The Court held that the state community property law was pre-empted by ERISA to the extent that it provided the sons with a right to the surviving spouse's benefits. *Id*. at 848-52. The Court explained that "it would be inimical to ERISA's purposes to permit testamentary recipients to acquire a competing interest in *undistributed* pension benefits, which are intended to provide a stream of income to participants and their beneficiaries." *Id*. at 852 (emphasis added).

---

[9]"As its name implies, a 'rollover' is [a] . . . tax-deferred method of moving [qualified retirement plan] assets from one [qualified retirement] plan to another or to an IRA." *Bijur v. Bijur*, 831 A.2d 824, 832 (Conn. App. 2003) (quotation marks and citation omitted).

We find *Boggs* to be distinguishable and inapplicable to this case. We note, first, that the *Boggs* Court was dealing with issues of community property laws, domestic relations orders, inheritances, and the competing interests of beneficiaries and purported beneficiaries, none of which is present here. More importantly, while the IRA in *Boggs* was derived from a lump-sum distribution from an ERISA-qualified employer-funded retirement savings plan, at the time of the first wife's testamentary gift to her sons, the retirement savings plan was **undistributed**. *Id*. at 836-37. In other words, *Boggs* "involved an attempt by a nonparticipating spouse to make a testamentary conveyance *while the husband was still a participant in the ERISA-covered pension plan*." *Russell v. Chase Inv. Serv. Corp.*, 09-CV-360-GKF-TLW, 2010 WL 419938, at *4 (N.D. Okla. Jan. 28, 2010); *see also Hawxhurst v. Hawxhurst*, 723 A.2d 58, 66 (N.J. Super. A.D. 1998) ("Notably, the [*Boggs*] Court limited its ruling to the pre-distribution context."). We find this circumstance -- a circumstance that undoubtedly is somewhat unique to that case -- to be *crucial* to the *Boggs* Court's ruling. *See id*. We further find that this detail distinguishes *Boggs* from, and renders it inapplicable to, our case.[10]

The circuit court also cited various Missouri cases in support of its holding that Bailey's IRA is "protected from execution under federal law," *i.e.*, *State ex rel. Nixon v. Mahmud*, 11 S.W.3d 718 (Mo. App. 1999); *State ex rel. Nixon v. McClure*, 969 S.W.2d 801 (Mo. App. 1998); and *Hatfield v. Cristopher*, 841 S.W.2d 761 (Mo. App. 1992). The issue in *Mahmud* was

_____

[10]While *Boggs* might be seen as suggesting that an IRA that was rolled over from an employer's ERISA-qualified plan is still protected by ERISA, we note that one bankruptcy court has held that "[n]othing in *Boggs* suggests that uncommingled monies distributed from pension plans and placed in accounts not under the auspices of ERISA remain protected by it." *In re Carbaugh*, 278 B.R. 512, 521 (B.A.P. 10th Cir. 2002). We also note that various federal courts have construed § 1056(d)(1) to apply to retirement benefits only while being held by the plan administrator; not after they reach the hands of the beneficiary. *See, e.g., DaimlerChrysler Corp. v. Cox*, 447 F.3d 967, 974 (6th Cir. 2006); *Wright v. Riveland*, 219 F.3d 905, 919-21 (9th Cir. 2000); *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1081-83 (10th Cir. 1994). *But see United States v. Smith*, 47 F.3d 681, 683-84 (4th Cir. 1995) (suggesting that ERISA funds should be protected both before and *after* they are received). We need not reach that issue here. There is no indication in this case that Bailey's IRA was a rollover from an employer's ERISA-qualified pension plan. The Schwab statement, which identifies Bailey's IRA as a "Contributory" IRA, would suggest that it was *not*.

10

whether an inmate's inherited proceeds from his mother's IRA were subject to MIRA or were exempted by Missouri's general exemption statute, § 513.430, RSMo 1994. 11 S.W.3d at 719-20. In finding that the funds were not exempted by that statute, the *Mahmud* Court explained:

> [T]he phrase "any money or assets, *payable* to a participant or beneficiary from . . . a retirement plan" [in § 513.430(10)(f)], does not encompass money that has previously *been paid* to, or placed in the possession of, a participant or beneficiary from an IRA. Had the Missouri General Assembly intended to protect from attachment *money paid from an IRA*, it would have explicitly done so.

*Id*. (emphasis added). Here, the circuit court took note of the fact that the *Mahmud* Court "distinguish[ed] between IRA funds which are *payable*, and thus exempt [under section 513.430(10)(f)], and those *which have already been paid,* and are not exempt." We presume that this refers to the fact that the inherited funds from Mahmud's mother's IRA had been deposited into his inmate account, whereas Bailey's IRA funds are in an investment account. We find that distinction irrelevant here, however, because the State asserted that it was seeking a judgment to attach Bailey's IRA for reimbursement when Bailey begins receiving funds from it. Moreover, the distinction the *Mahmud* Court made between *payable* and *paid*, refers to the language in Missouri's general exemption statute (§ 513.430),[11] not ERISA.

> Nor are *McClure* and *Hatfield* controlling here. As the *Mahmud* Court explained:

> Unlike section 513.430(10)(f), the federal anti-attachment provisions . . . in *McClure* [as to civil service benefits, 5 U.S.C. § 8346(a)] and *Hatfield* [as to federal social security exemption, 42 U.S.C. § 407(a)] contain more extensive language that encompasses *not only funds payable* to a beneficiary but also *funds that have been paid to and are in the possession and control* of the intended beneficiary.

---

[11]This Court eventually held, in *State ex rel. Nixon v. Overmyer*, 189 S.W.3d 711, 717-18 (Mo. App. 2006), that the exemptions in Chapter 513 (*i.e*., § 513.430), do not apply to MIRA actions in any event, because MIRA's exemption provisions (§ 217.827(1)(b)) are in direct conflict with Chapter 513, and MIRA's exemption provisions are more specific to a MIRA action; thus, section 513.430 is in applicable. Section 217.827(1)(b) exempts only "[t]he homestead of the offender up to fifty thousand dollars" and "[m]oney saved by the offender from wages and bonuses up to two thousand five hundred dollars paid the offender while he or she was confined[.]"

11

11 S.W.3d at 721 (emphasis added). *McClure* and *Hatfield* are distinguishable from this case for the same reasons, *i.e.*, that there also is no such "extensive language" in 26 U.S.C. § 408(a) to similarly protect IRA funds from attachment. None of the MIRA cases cited by the circuit court overcomes the reality that an IRA is *not* protected by ERISA's anti-alienation provision.

Based on the foregoing, we conclude that the circuit court erred as a matter of law in finding that ERISA pre-empts MIRA as to Bailey's IRA. Thus, we reverse the circuit court's judgment as to Bailey's IRA and remand for further proceedings in accordance with this opinion.

### Bailey's Cross-Appeal

In his cross-appeal, Bailey contends that the circuit court erred in entering judgment directing portions of his assets to be paid to the State under MIRA because the State presented no evidence at trial as to its costs for Bailey's care. Instead, the day after trial, the State filed a "Treasurer's Certification of Costs," stating that Bailey's "cost of care . . . from September 13, 2010, to January 9, 2015, was $78,453.67." Bailey asserts that, because the State did not offer the Certification of Costs at trial or move to re-open the evidence, the circuit court erred in finding that it could be considered and that the State had established its costs of $78,453.67.[12]

We disagree. As noted, MIRA authorizes the State to seek reimbursement for the "cost of care" it incurs while an offender is maintained in a state correctional facility. § 217.831.3. "Cost of care" is defined in MIRA as "the cost to the department of corrections for providing transportation, room, board, clothing, security, medical, and other normal living expenses of offenders under the jurisdiction of the department, as determined by the director of the department[.]" § 217.827(2). Under section 217.841.2 of MIRA, "[t]he state treasurer may determine the amount due the state for the cost of care of an offender and render statements

---

[12]We presume that the appellant would have preferred the circuit court to have said, "The court *sua sponte* reopens the evidence for the limited purpose of the receipt of the Treasurer's Certificate of Costs."

12

thereof[.]"  And section 217.831.1 requires the director of the Department of Corrections to "forward to the attorney general a report on each offender containing . . . an estimate of the total cost of care for that offender."  Pursuant to section 217.833.2, "[t]he amount of reimbursement sought from an offender shall not be in excess of the per capita cost for care for maintaining offenders in the state correctional center in which the offender is housed for the period or periods such offender is [held] in a state correctional center."  The inmate's total cost of care is calculated based on the per capita cost for care at the facility where the inmate is being held.  *See id*.

Here, the State alleged in its Petition that "for the fiscal year 2012, the inmate costs per capita at [the facility where Bailey was housed] were $21,490.00," citing section 217.833.2.  The circuit court then issued a show cause order, in accordance with section 217.835.2.  It stated that, to respond to the State's Petition and the Order to Show Cause, Bailey "must file an Answer in the form of a written response that admits or denies the truth of each numbered paragraph in the Petition."  The record shows that Bailey did not file an Answer and did not deny (or in any way respond to) the State's allegation of its costs for his care.[13]  By failing to deny this allegation, Bailey is deemed to have admitted it.

Given that Bailey admitted that "the inmate costs per capita at [the facility where he was being held] were $21,490.00" for the fiscal year 2012, there is no basis on which he can now complain that he was prejudiced by the State's failure to present evidence at trial as to its costs for his care.  Bailey's point is denied.

---

[13]"If a responding party has knowledge or information sufficient to form a belief as to the truth of an averment, the party shall admit or deny the specific averment.  If the responding party is without knowledge or information sufficient to form a belief as to the truth of a specific averment, the party shall so state, and this has the effect of a denial."  Rule 55.07.

13

## Conclusion

Based on the foregoing, we affirm in part and reverse in part.  We remand to the circuit court for further proceedings in accordance with this opinion.


 /s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.